394 So.2d 299 (1981)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and United Brotherhood of Carpenters and Joiners of America, Afl-Cio, Plywood Workers Local Union No. 3181
v.
GEORGIA-PACIFIC CORPORATION.
No. 52308.
Supreme Court of Mississippi.
January 7, 1981.
As Amended On Denial of Rehearing February 25, 1981.
Fred J. Lotterhos, John L. Maxey, II, Cupit & Maxey, Jackson, Lynn Agee, Memphis, Tenn., for appellants.
*300 L. Arnold Pyle, Peyton S. Irby, Jr., Watkins, Pyle, Ludlam & Stennis, Jackson, for appellee.
Before ROBERTSON, P.J., and SUGG and BOWLING.
ROBERTSON, Presiding Justice, for the Court:
This appeal is from an order of the Circuit Court of the First Judicial District of Hinds County reversing the findings and decision of the Mississippi Employment Security Commission (MESC) and its Board of Review. MESC's Order entered May 11, 1979, found that:
"[T]here was a stoppage of work at Georgia-Pacific Corporation which existed because of a labor dispute, and that such stoppage of work was caused by an unjustified lockout by said employer; and that under the provisions of § 71-5-513 A(5)(a), Mississippi Code of 1972, such claimants are not disqualified for benefits under the Mississippi Employment Security Law."
The court found that the Commission's Order was erroneous as a matter of law, and that the lockout by GP was not an "unjustified lockout" but was part of a legitimate collective bargaining process for a new contract of employment for Plywood Workers Local Union No. 3181 at Georgia-Pacific's Louisville, Mississippi, plywood plant. The court also was of the opinion "that the Commission's investigation and ruling on the justifiability or reasonableness of the plaintiff's lockout was clearly preempted by the federal law."
The three-year contract of employment between GP and Union No. 3181 expired on January 19, 1979. GP and the local Union had been negotiating since the middle of December, 1978, for a new contract, but had been unable to reach an agreement on all terms. The deadline of January 19, 1979, was extended by agreement of the parties, and GP and the Union continued to bargain and negotiate. On February 13, 1979, GP gave the required written notice to terminate the contract if no agreement was reached. On February 26, 1979, GP and the Union agreed to further extend the contract through March 1, 1979.
Article XXIV of the contract provided:
"At any time after the expiration date if no agreement on the question at issue has been reached, either party may give written notice to the other party of intent to terminate the agreement in not less than ten (10) days. All the provisions of the agreement shall remain in full force and effect until the specified time has elapsed. During the period, attempts to reach an agreement shall be continued and there shall be no strikes or lockouts.
"If the parties have failed to resolve their differences when the above specified time has elapsed, all obligations under this agreement are automatically canceled."
On March 2, 1979, GP informed the Union and its employees that it had no more work for them until the terms of a new contract were agreed upon and all contract disputes resolved. GP locked up its Louisville plant.
On March 5, 1979, the employees began applying for unemployment compensation benefits. GP and the Union continued to negotiate and bargain and on April 13, 1979, a new contract was agreed to. Claimants began returning to work on April 15.
On March 22, 1979, GP filed a complaint in the United States District Court for the Southern District of Mississippi, in which it sought a temporary restraining order, preliminary and permanent injunction, and declaratory judgment, to stop the proposed action of the Mississippi Employment Security Commission to determine whether the lockout of the employees for the purposes of awarding unemployment benefits was justified or unjustified. The grounds upon which the relief was requested were that the actions of MESC were contrary to federal labor policy and violated the doctrine of federal preemption and the Supremacy Clause of the United States Constitution.
After hearing argument on the matter, the United States District Court dismissed the complaint, holding that GP was not *301 entitled to a prohibitory injunction "on this interlocutory, or preliminary application." MESC then proceeded to hear the matter and on May 11, 1979, entered the following order:
"The Commission finds, based upon convincing substantial evidence in the record before it, that there was a stoppage of work at Georgia-Pacific Corporation which existed because of a labor dispute, and that such stoppage of work was caused by an unjustified lockout by said employer; and that under the provisions of § 71-5-513 A.(5)(a), Mississippi Code of 1972, such claimants are not disqualified for benefits under the Mississippi Employment Security Law." (Emphasis added).
GP appealed to the Board of Review of MESC. After hearing additional evidence, the Board of Review affirmed the Order of the Commission.
Under the provisions of MCA § 71-5-531 (1972), GP then began an action in the Hinds County Circuit Court (First District) against MESC to review its decision. Section 71-5-531 provides in part:
"In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law. Such actions, and the questions so certified, shall be heard in a summary manner and shall be given precedence over all other civil cases."
The circuit court reversed the decision of MESC and its Board of Review. The court found that, not only was the lockout justified, but also that the Commission's decision was an invasion of an area preempted by national labor policy.
In their appeal to this Court, MESC and the Union have assigned as error:
I. The doctrine of res judicata bars relitigation of the preemption question raised by Georgia-Pacific.
II. Alternatively, if the Court holds that res judicata does not apply, appellants contend that the determination by the MESC as to the eligibility of claimants for unemployment benefits was not preempted by the federal labor policy.
III. The findings of the Board of Review as to the facts were supported by evidence and it was error to reverse those findings.

I.
The doctrine of res judicata does not apply in the case at bar. GP brought suit in the Federal District Court for injunctive relief to keep MESC from even hearing the matter. In order for the doctrine of res judicata to apply, four essential conditions must be met. There must be:
(1) identity in the things sued for;
(2) identity of the cause of action;
(3) identity of the persons and parties to the action; and
(4) identity of the quality or character in the person against whom the claim is made.

Pray v. Hewitt, 254 Miss. 20, 179 So.2d 842, 844 (1965).
At least two of these conditions are absent in the case at bar.

II.
Mississippi Code Annotated section 71-5-3 (1972) provides in part:
"As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden, which now so often falls with crushing force upon the unemployed worker and his family... . The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the *302 enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." (Emphasis added).
MCA Section 71-5-513 A (1980 Supp.) sets forth in considerable detail when an individual claimant is disqualified for benefits under the Mississippi Employment Security law. Under the first four subsections, the individual claimant is disqualified:
(1) if "he left work voluntarily without good cause;"
(2) if "he was discharged for misconduct connected with his work;"
(3) if "he wilfully makes a false statement, a false representation of fact, or wilfully fails to disclose a material fact for the purpose of obtaining or increasing benefits under the provisions of this law;" and
(4) if he fails, "without good cause, either to apply for available suitable work when so directed by the employment office or the commission, to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the Commission."
MCA Section 71-5-513 A(5) provides:
"(5) For any week with respect to which the commission finds that his total unemployment is due to a stoppage of work which exists because of a labor dispute at a factory, establishment, or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the commission:
(a) He is unemployed due to a stoppage of work occasioned by an unjustified lockout, provided such lockout was not occasioned or brought about by such individual acting alone or with other workers in concert;" (Emphasis added).
The sole and only question before MESC was whether the stoppage of work at GP's Louisville plant was due in any measure to the claimants' actions, or whether it was due to GP's actions. If it was due to GP's actions, then the claimants were entitled to unemployment compensation; if it was due to the claimants' actions, then they were not entitled to unemployment compensation. It was not the purpose of the Mississippi Employment Security law to thrust the Commission into the middle of collective bargaining negotiations between an employer and its employees. The purpose of the legislature in enacting this law, as set forth in MCA section 71-5-3 (1972) was to lighten the burden of involuntary unemployment by "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." (Emphasis added).
On July 17, 1979, the Board of Review of MESC rendered its opinion. In its Findings of Fact, the Board of Review found as facts, among other things:
"On March 2, 1979 the employer closed the plant and the work stoppage resulted from such closing of the plant by the employer. The union had continued its negotiating sessions with the employer up until that time. There had been no strike vote taken by the union and no indication had been given by the union to the employer that any strike by the workers was contemplated. The employees were ready and willing to continue working and their unemployment resulted from the closing of the plant by the employer. Negotiations between the employer and the union continued during the stoppage of work and agreement for a new contract between the union and the employer was reached on April 13, 1979. The work stoppage ended and work was resumed on April 15, 1979." (Emphasis added).
In its Opinion, the Board said:
"Section 71-5-513 A(5)(a) of the Mississippi Employment Security Law provides that an individual shall be disqualified for benefits for any week with respect to which the Commission finds that his total unemployment is due to a stoppage of work which exists because of a labor dispute at a factory, establishment or other premises at which he is or was last employed; provided, that this subsection *303 shall not apply if it is shown to the satisfaction of the Commission that he is unemployed due to a stoppage of work occasioned by an unjustified lockout provided such lockout was not occasioned or brought about by such individual acting alone or with other workers in concert. It is apparent that the claimants were unemployed due to a stoppage of work at the Louisville Plant of Georgia-Pacific Corporation, and that the stoppage of work existed because of a labor dispute. There also seems to be no disputing the fact that the stoppage of work was occasioned by a lockout by the employer. The question to be decided, therefore, is whether such lockout was an unjustified lockout and whether such lockout was occasioned or brought about by the claimants acting alone or in concert.

Under the facts as stated above, it is the opinion of the Board that the work stoppage was occasioned by an unjustified lockout, within the meaning of the Law, and that such lockout was not occasioned or brought about by the claimants acting alone or in concert. The claimants were ready and willing to continue working. Their bargaining agent was continuing to negotiate an agreement with the employer and their unemployment resulted not from their own action but from the action of the employer in closing the plant. The Board, therefore, concurs in the determination made by the Commission that the claimants are not disqualified for benefits under the above provision of the Law." (Emphasis added).
This Court finds that the Findings of Fact, the Opinion and the Decision of the Board of Review that the work stoppage was occasioned by an unjustified lockout, within the meaning of the Law, and that such lockout was not occasioned or brought about by the claimants acting alone or in concert, that the claimants were ready and willing to continue working, and that their unemployment resulted not from their own action but from the action of the employer in closing the plant, are supported by substantial evidence.
Mississippi Code Annotated section 71-5-531 (1972) sets the limits of appellate review by the circuit court in clear and unmistakable language:
"In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."
The circuit court was in error in holding that the decision of MESC, as affirmed by its Board of Review, was erroneous as a matter of law and that MESC did not have the right to decide whether the claimants were voluntarily or involuntarily unemployed and whether they were, or were not, entitled to unemployment compensation. The order of the circuit court is, therefore, reversed and the order of the Mississippi Employment Security Commission reinstated.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
HAWKINS, J., takes no part.