# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-00504 COA

**DEANNA WADE**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

DATE OF JUDGMENT:               02/04/97

TRIAL JUDGE:                    HON. LAMAR PICKARD

COURT FROM WHICH APPEALED:      CLAIBORNE COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:        TRAVIS BUCKLEY
                                ROBERT B. MCDUFF

ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY: CHARLES W. MARIS, JR.

DISTRICT ATTORNEY:              ALEXANDER MARTIN

NATURE OF THE CASE:             CRIMINAL - FELONY

TRIAL COURT DISPOSITION:        CONVICTED OF MURDER AND SENTENCED TO LIFE
                                IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT
                                OF CORRECTIONS

DISPOSITION:                    REVERSED AND REMANDED WITH INSTRUCTIONS -
                                12/18/98

MOTION FOR REHEARING FILED:     1/4/99

CERTIORARI FILED:               4/6/99

MANDATE ISSUED:

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

HINKEBEIN, J., FOR THE COURT:

¶1. Deanna Wade (Wade) was convicted February 4, 1997 in the Circuit Court of Claiborne County of the murder of her boyfriend/business partner Ralph Simpson (Simpson). Wade was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Since Mississippi has abolished parole for crimes occurring after June, 30, 1995, pursuant to Miss. Code Ann. § 47-7-3(1)(g)

(Rev. 1993 & Supp. 1998), Wade's sentence precluded any possibility for parole. Aggrieved by her conviction, she appeals to this Court on the following grounds:

**I. THE EVIDENCE IS INSUFFICIENT TO DEMONSTRATE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT DID NOT ACT IN SELF-DEFENSE, AND SHE THEREFORE IS GUILTY OF NEITHER MURDER NOR MANSLAUGHTER.**

**II. THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION FOR MURDER BEYOND A REASONABLE DOUBT AND AT THE MOST, THE DEFENDANT IS GUILTY ONLY OF MANSLAUGHTER.**

**III. EVEN IF THIS COURT DOES NOT REVERSE IN WHOLE OR IN PART BECAUSE OF THE INSUFFICIENCY OF THE EVIDENCE, IT SHOULD AT LEAST GRANT A NEW TRIAL.**

**IV. THE TRIAL COURT ERRED BY PRECLUDING THE DEFENSE FROM PRESENTING CERTAIN EVIDENCE REGARDING THE VICTIM'S REPUTATION FOR VIOLENCE.**

**V. THE TRIAL COURT ERRED BY PRECLUDING THE DEFENSE FROM PRESENTING CERTAIN EVIDENCE REGARDING SPECIFIC ACTS OF THE VICTIM SHOWING HIS PROPENSITY TO VIOLENCE TOWARD THE DEFENDANT.**

**VI. BECAUSE THE JURY INSTRUCTION DID NOT REQUIRE THE JURY TO FIND ALL OF THE ELEMENTS OF MURDER, THE CONVICTION MUST BE REVERSED.**

**VII. THE TRIAL JUDGE ERRED IN RESTRICTING THE DEFENSE CROSS-EXAMINATION OF A PROSECUTION WITNESS.**

**VIII. THE PROSECUTOR ENGAGED IN MISCONDUCT BY ERRONEOUSLY DEFINING THE CONCEPT OF REASONABLE DOUBT TO THE VENIRE, THUS PREJUDICING THE DEFENDANT'S RIGHT TO A FAIR TRIAL.**

We hold Wade's second assignment of error to have merit. While the evidence presented does not support a conviction of murder, we find it does support the lesser charge of manslaughter. Accordingly we reverse and remand for re-sentencing for the crime of manslaughter.

## FACTS

¶2. The four year relationship between the 32 year old Wade and the 51 year old Simpson was one marked by brutality. The record and the State do not dispute the fact that Simpson was a cruel and vicious man, characteristics that were exacerbated when he was drunk, which seems to have been the case most of the time. There was testimony that he had beaten Wade on prior occasions, including once with the butt of a shotgun which resulted in a trip to the hospital. Wade and Simpson were co-owners of a nightclub in Claiborne County, although the record reveals that it was purchased solely with Wade's savings and credit, since Simpson had filed bankruptcy some years earlier. Wade and Simpson were not married, and Wade

had a five year old son from a previous marriage.

¶3. In the early morning hours of October 6, 1996, Wade was standing outside the front door of the nightclub talking with two of her waitresses prior to closing time. Inside, Simpson was behind the bar serving several male patrons. The record shows he had been drinking straight whiskey all night. After the autopsy, his blood-alcohol level was found to be 0.27. One of the male patrons testified that Simpson asked where the women were and then commented that he would get them back in the nightclub. Simpson then pulled a .45 automatic out of his back pocket and fired a shot into the opposite wall. Simpson apparently always carried the weapon.

¶4. Wade and the waitresses ran into the nightclub in response to the gun blast. Wade and Simpson began arguing. Some of the witnesses testified that Wade threw a bar stool at Simpson, which did not hit him. Others stated they never saw her do such a thing. Simpson then attacked Wade and began pounding her head on a table with such force that a bar sign fell off the wall. He let her go and the two argued further. At this point Simpson grabbed her by the hair and began slamming her head against the edge of a pool table. Witnesses described the beating as severe and noted that some of Wade's hair was pulled out by the roots. During the second beating, Simpson reached for the .45 automatic in his back pocket, but he was restrained by some of the men, who took the pistol away. Apparently, Wade was unaware that Simpson had been disarmed and according to her testimony, believed he still had the gun. At this point Wade was able to leave the nightclub and run to the small house next door which she shared with Simpson. She tried to call her mother to come pick her up but because the phone in the nightclub had been knocked off the hook during the fight, she was unable to make the call. In addition, Simpson reportedly had the keys to her car. One of the waitresses later testified that she would have driven Wade where she wanted to go, but that Wade had never made such a request.

¶5. Wade apparently retrieved a .38 caliber revolver from the house and returned to the nightclub. She testified that her memory was unclear as to what exactly happened because of the repeated blows to her head. As she entered the nightclub with the gun held at waist level, Simpson was back behind the bar. Witnesses say she stated something to the effect that "[y]ou ain't gonna hit on me no more." Simpson then came from behind the bar and began moving toward her with a smile on his face. Wade shot him once, and he died a short time later. The autopsy revealed that Simpson was shot from a distance of over two feet, and witnesses say he was five feet from Wade when she pulled the trigger. Witnesses say she then went to Simpson's side, crying and hugging him. At trial, the State brought out testimony that Wade had said in the past that she would kill Simpson if he ever beat her again. The State also brought out testimony that Wade was tired of Simpson because his heavy drinking was a drain on the nightclub's profits and it rendered him unable to perform sexually.

## ANALYSIS

¶6. While Wade's second assignment of error is outcome determinative, our analysis will also include discussion of her first assignment of error concerning self-defense.

### I. THE EVIDENCE IS INSUFFICIENT TO DEMONSTRATE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT DID NOT ACT IN SELF-DEFENSE, AND SHE THEREFORE IS GUILTY OF NEITHER MURDER NOR MANSLAUGHTER.

¶7. Wade argues that given the uncontradicted evidence of Simpson's beatings of Wade and the fact that he

was advancing upon her when shot, the State failed to meet its burden of proving she did not act in self-defense. The State counters that the jury was correct in finding insufficient evidence of self-defense. We agree with the State.

¶8. Where the issue deals with the sufficiency of the evidence, the standard of review is that the "court must consider all of the evidence which supports the State's case in a light most favorable to the [S]tate." *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989). In addition, "[t]he State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* Matters of weight and credibility of the evidence are to be left up to the jury. *Pinkney v. State*, 538 So. 2d 329, 353 (Miss. 1988). The Mississippi Supreme Court has held that a reviewing court "may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996). Only in cases "when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice" will a reviewing court disturb it on appeal. *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997).

¶9. The question of whether a homicide will be deemed justifiable is controlled by Miss. Code Ann. § 97-3-15, which states in part:

(1) The killing of a human being by the act, procurement, or omission of another shall be justifiable in the following cases:

(f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished;

Miss. Code Ann. § 97-3-15(1)(f) (Rev. 1994). Wade insists that in her last encounter with Simpson, after she returned to the nightclub with the revolver, she had reasonable grounds to expect a third severe beating. Wade also refers to Mississippi's "stand his ground" principle where "a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing." *Haynes v. State*, 451 So. 2d 227, 229 (Miss. 1984). Under this well entrenched doctrine, there is no duty to flee on the part of a person faced with life threatening danger, so long as:

> he is in a place where he has a right to be, and is neither engaged in an unlawful, nor the provoker of, nor the aggressor in, the combat. In such case, he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.

*Cook v. State*, 467 So. 2d 203, 210-11 (Miss. 1985) (quoting *Long v. State*, 52 Miss. 23, 34 (1876)). In the case *sub judice*, Wade was a co-owner of the nightclub and as such clearly had a right to be there. However, the question of whether Wade was the provoker or aggressor when she returned with gun in hand is determinative of whether self-defense would justify the killing. The Mississippi Supreme Court has held that "one who leaves an altercation, arms himself, and returns with the intent to and does use his weapon on the other party cannot claim self-defense." *Griffin v. State*, 495 So. 2d 1352, 1354 (Miss. 1986) (citing *Cooley v. State*, 391 So. 2d 614, 617 (Miss. 1980)). In the case *sub judice*, it is undisputed

from the record that Wade left the scene of the altercation, armed herself, and returned to confront Simpson. The record reveals an interval of at least five minutes between the time Wade left the nightclub and when she returned and shot Simpson. Whether she shot Simpson in response to a reasonable fear of further abuse is a question for the jury. *Meshell v. State*, 506 So. 2d 989, 991-92 (Miss. 1987) (finding the issue of justifiable self-defense is a question of weight and credibility of the evidence to be decided by the jury). In a case not cited by either party, the Mississippi Supreme Court has recently held that "where an attacker is much larger than the one attacked, the nature of the assault, though only with fists, might be such as to reasonably show that the one being attacked is in danger of great bodily harm and therefore is justified in the use of a deadly weapon to defend herself." *Manuel v. State*, 667 So. 2d 590, 592 (Miss. 1995) (citing *Hinson v. State*, 218 So. 2d 36, 39 (Miss. 1969). What distinguishes the case *sub judice* from *Manuel* and *Hinson* is that in those cases, the defendant used the deadly weapon against the larger assailant while the attack was underway, as opposed to this case, where Wade confronted Simpson some time after the altercation had ended. The jury in this case had been instructed as to self-defense and was free to acquit if they felt the evidence warranted such a verdict. As such we find no merit to this assignment of error.

## II. THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION FOR MURDER BEYOND A REASONABLE DOUBT AND AT THE MOST, THE DEFENDANT IS GUILTY ONLY OF MANSLAUGHTER.

¶**10.** Wade argues that even if the State was able to carry its burden in overcoming self-defense, it had not proven the crime of murder beyond a reasonable doubt and at most, Wade was guilty of manslaughter. The State contends the evidence supports a verdict of murder. We disagree and find merit to Wade's assignment of error.

¶11. Manslaughter is defined by Miss. Code Ann. § 97-3-35 as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self defense. . . ." Miss. Code Ann. § 97-3-35 (Rev. 1994). The term "heat of passion" is defined as:

> [A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986). The uncontradicted record leaves no question as to the savagery of the beating that Wade received at the hands of Simpson. As such, there is little doubt that Wade's rage at the time of the shooting was the result of Simpson's provocation, and the evidence is sufficient to serve as the basis of a "heat of passion" manslaughter conviction.

¶12. The Mississippi manslaughter statute also recognizes the imperfect self-defense theory. Miss. Code Ann. § 97-3-35 (Rev. 1994). The theory is "that [the defendant] killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent the appellant from inflicting death or great bodily harm upon him. . . ." *Lanier v. State*, 684 So. 2d 93, 97 (1996). While our discussion above details the failings of Wade's self-defense argument, we feel the evidence is conducive to a finding of imperfect self-defense with the accompanying verdict of manslaughter.

While Wade's belief that she needed to shoot Simpson to protect herself may have not been reasonable, it may well have been a bona fide belief. The evidence supporting this view includes the severe blows to the head she had received and her apparent inability to remember even exculpatory specifics about the final encounter in the nightclub.

¶13. Both "heat of passion" manslaughter and "imperfect self-defense" manslaughter depend on the absence of malice which would be required for a murder conviction. Miss. Code Ann. § 97-3-35 (Rev. 1994). The Mississippi Supreme Court has defined "malice aforethought" as the equivalent of deliberate design. *Gossett v. State*, 660 So.2d 1285, 1293 (Miss.1995). In *Gossett*, deliberate design was further clarified as "full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. 'Design' means to calculate, plan, contemplate . . . deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Id.* (quoting *Windham v. State*, 520 So.2d 123, 127 (Miss.1987)). However, the Mississippi Supreme Court has also held:

> A person may be guilty only of manslaughter or justifiable homicide when slaying another even though the accused is mad and is bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter "to do any unlawful act, or after such attempt shall have failed," if such anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is then thwarted, and is nonexistent prior thereto. Each case must depend upon its own facts and circumstances.

*Harrell v. State*, 218 So. 2d 883, 886 (Miss. 1969) (citing *Bangren v. State*, 196 Miss. 887, 897, 17 So.2d 599, 600 (Miss. 1944)). This holding seems to apply to the case *sub judice* in showing the requisite absence of malice. While Wade was undoubtably mad, it is also clear that her ill will was engendered by the earlier unlawful acts of Simpson and what appeared to be a renewed attack. This clearly was a killing in the heat of passion and arguably also a case of imperfect self-defense and as such, manslaughter was the appropriate verdict. This Court accordingly reverses and remands for re-sentencing for the crime of manslaughter.

¶14. **THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY OF CONVICTION OF MURDER IS REVERSED AND REMANDED FOR RE-SENTENCING FOR THE CRIME OF MANSLAUGHTER. COSTS OF THIS APPEAL ARE ASSESSED AGAINST CLAIBORNE COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, AND KING, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, P.J.**

PAYNE, J., DISSENTING:

¶15. I begin by stressing the obvious: the death of the victim in this case, as in any homicide case, is very tragic, even in light of his actions directed toward Wade that fateful late night and early morning in October, 1996. I intend neither to insult the victim's family nor to lessen the impact of this tragedy on the victim's family because that family has lost a loved one. However, while I agree with the majority that the act committed by Wade in this case was not, by any rationale assessment, murder, my reading of the record leads me to the conclusion that Wade's action in defending herself from imminent danger and great personal

injury at the hands of Simpson constituted justifiable homicide under Miss. Code Ann. § 97-3-15 (Supp. 1998). Accordingly, since I would reverse and render this conviction on the basis of justifiable homicide, I must respectfully dissent from the majority's decision to only reverse and remand for re-sentencing for manslaughter.

¶16. The jury system is the bedrock of our legal system, and we rarely tamper with a jury's work; however, there are times when a trial jury simply gets it wrong and for whatever reason demonstrates a bias or prejudice in their verdict. It is in these cases where this Court should step in and correct clear wrongs. The majority has taken a step in the right direction but stopped short of reaching a just result. Wade's conviction in the case *sub judice* represents an occasion where I believe the jury's verdict, if sustained even in part as the majority proposes, will result in an unconscionable injustice.

¶17. The Mississippi Supreme Court has held that the statutory language "reasonable ground to apprehend" under § 97-3-15(1)(f)[1] implies fear, apparent danger, or anticipation, not actual danger. *Dillon v. State*, 196 Miss. 625, 18 So. 2d 454 (1944); *Bell v. State*, 207 Miss. 518, 42 So. 2d 728 (1949). This statutory interpretation is well-established. To have been justified in shooting Simpson that evening, Wade need only have feared and anticipated yet a third heinous beating by Simpson to have been justified in shooting him in self-defense. Based on the evidence presented by both prosecution and defense witnesses, Wade certainly anticipated an apparent danger of yet a third vicious beating that evening by Simpson when she returned to their jointly owned business and Simpson approached her.

¶18. The night's events were triggered when Simpson carelessly fired a pistol into the cement wall of the bar. Janice Smith, an employee at the bar where the justifiable homicide occurred, testified that she, Wade, and a Melissa Cockerhan, another employee at the bar, were outside when they heard the gunshot. Startled, all three rushed inside to see what had happened. Shortly after re-entering the bar, Simpson, who was intoxicated and armed with the pistol which he was known to carry, came from behind the bar and grabbed Wade[2] by the hair, threw her on a table, and began repeatedly striking her head against the table. The blows were so hard that a sign fell off the barroom wall, and Wade testified that she lost control of her bladder and that she could not feel her feet. Wade had visible knots on her head, according to Smith. After a pause in the beating and an intervening verbal argument, Simpson again manhandled Wade by the hair and struck her head repeatedly into a pool table. During this beating incident, a patron confronted Simpson and disarmed him. Smith cannot recall where Wade went after Simpson beat her head against the pool table. Smith's next recollection is Wade returning to the bar and shooting Simpson as he again approached her. Cockerhan also corroborated the barbaric beatings of Wade by Simpson that evening as well as what she described as golf ball sized knots on Wade's head. Simpson's violent acts perpetrated against Wade were not confined to the evening in question. Sherry Sullivan Roach testified that she had witnessed Simpson strike Wade with his fist, violently enough to bloody her mouth, at a club in Laurel in 1994. Ben Williams testified that he had seen Wade shortly after a violent episode between her and Simpson and that Wade was severely bruised. Wade testified in her own behalf, vividly outlining other beatings she had suffered at the hands of Simpson. On January 22, 1995, Simpson became enraged when Wade refused to allow him and other workers, all intoxicated, to drive an automobile titled in Wade's name. According to Wade, Simpson attacked her and beat her until two men restrained him. At that point, Simpson retrieved a shotgun and threatened to kill everybody in the bar. Simpson locked Wade and himself in a room off the bar and beat her with the stock of the shotgun. After repeatedly beating her with the shotgun, he threw her entire weight out of the room by her hair and told bystanders he would kill Wade if they did not take her away. At this point, those present took Wade to Ben Williams's home who transported Wade to the hospital for

treatment for her injuries suffered that night. Wade filed charges against Simpson relating to this incident.

¶19. Unfortunately, the two beatings suffered by Wade the evening of the shooting and the shotgun beating outlined above are not the only incidents where Wade was the victim of Simpson's violent aggression. Wade testified about Simpson's violence "there are so many of the -- I guess it sounds awful to say, but the small beatings that you don't put in order. Then you have the nights he's up screaming all night, and you're scared to move or breathe." Wade relates another incident in 1994 on her birthday where Simpson was violent after becoming intoxicated, and also the incident witnessed by Sherry Sullivan Roach in Laurel, which Wade testified was because she asked Simpson to wait a minute after he had summonsed her to leave the establishment the couple was patronizing that evening. The beatings and abuse suffered by Wade at the hands of Simpson were so numerous that there was no way to distinguish them all, "unless there was a brawl. There was just so many times."

¶20. On the evening that Wade shot Simpson, after her second beating of the evening on the pool table, Wade left to try and get help. She had no way to retreat from the property, as Simpson had her car keys in his pocket from an earlier point in the evening when he had driven her car. Her efforts to telephone for help from the residential area of the bar were foiled by the receiver not being on the telephone inside the bar. Wade had no place to hide because she lived with Simpson in the residential area of the bar, where she would have been alone with him after the bar was closed. Obviously, the danger was imminent, if not immediate.

¶21. In a prosecution for homicide, the defendant needs only a reasonable apprehension that great bodily harm is about to be inflicted upon him or her and that there was an imminent threat of such harm being accomplished in order to justify a claim of self-defense. *Stennis v. State*, 234 So. 2d 611 (Miss. 1970). I believe that, based on Simpson's conduct that evening as well his history of violent physical abuse of Wade, the fact that Simpson was known to carry a handgun, the fact that Wade attempted to call for help but could not, and the fact that Simpson had her car keys that prevented her from leaving, she had a reasonable apprehension that Simpson was about to inflict serious bodily harm upon her or even kill her when he approached her on her return to the bar; thus, she was justified in her action of self-defense. The majority points to testimony that Wade had made previous statements that she would kill Simpson if he ever beat her again and that Wade was tired of Simpson's heavy drinking because it drained the bar's profits and had rendered Simpson unable to perform sexually. Even with this testimony, the events of that evening and the uncontradicted testimony that Simpson violently beat Wade twice that evening leads me to the conclusion that Wade was justified in her actions when Simpson came toward her again that night.

¶22. Accordingly, I respectfully dissent.

SOUTHWICK, J., dissenting

¶23. The majority asserts that the evidence to convict Deanna Wade of murder was insufficient. Though I agree that there was ample evidence that she had been victimized by the deceased, Ralph Simpson, I also find nothing more than a jury issue that she was committing the crime while in the heat of passion. I would affirm.

¶24. The majority in a commendably balanced manner reviews the evidence both supporting and undermining the conviction for murder. I will not repeat it. Taking that evidence, the court concludes that there could not be deliberate design or malice. Instead, there was anger generated by the victim's own

conduct that propelled Wade to resist, but to do so in a manner that went beyond self-defense. Thus she was guilty but only of manslaughter.

¶25. The difficulty that I have with this view is that Simpson's attack on Wade had long ended. Wade left the bar and went to the house next door. She tried to use the telephone but it was disconnected. During this interlude, she also acquired a revolver. Only after the passage of several minutes did she return to the bar, declare that this was the last time that Simpson was going to hurt her, and then shoot him.

¶26. The defendant was entitled to have a heat of passion manslaughter instruction given to the jury, and that was done. There was no entitlement to a directed verdict of acquittal of murder. There was time for Wade's passion to cool after she left the bar and walked next door. Those were facts that the jury could use to reject manslaughter and convict for deliberate design to kill.

¶27. Though I sympathize with Wade's plight, the law does not declare that a person justifiably angry with another has a right to kill without being subject to a murder conviction.

**MCMILLIN, P.J., JOINS THIS SEPARATE OPINION.**

1. The present justifiable homicide statute was formerly codified as § 2218 of the 1942 Code.

2. Smith also testified that Wade threw a chair at Simpson prior to his attacking her; however, this was disputed and not corroborated by all the witnesses to the beatings and the shooting. Further, Wade denied provoking Simpson in such a manner.