# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00565-SCT

*DEANNA WADE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2000 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT B. McDUFF |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | ALEXANDER MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/20/2001 |
| MOTION FOR REHEARING FILED: | 10/2/2001; denied 1/10/2002 |
| MANDATE ISSUED: | 1/17/2002 |

### BEFORE PITTMAN, C.J., DIAZ AND EASLEY, JJ.

### EASLEY, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Deanna Wade ("Wade") was previously convicted on February 4, 1997, in the Circuit Court of Claiborne County, Honorable Lamar Pickard, Circuit Court Judge, presiding, of the murder of Ralph Simpson ("Simpson") and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. Wade appealed to the Mississippi Court of Appeals which found the evidence of murder lacking, but it affirmed the conviction on the lesser-included offense of manslaughter. *Wade v. State*, 724 So.2d 1007 (Miss. Ct. App. 1998). The motions for rehearing were denied by the Mississippi Court of Appeals. *Id*. This Court granted the writ of certiorari. On October 21, 1999, this Court upheld the decision of the Court of Appeals, affirming the Court of Appeals' reversal of the murder conviction and imposing the conviction of manslaughter with remand to the Circuit Court of Claiborne County for resentencing for manslaughter. *Wade v. State*, 748 So.2d 771 (Miss. 1999). Wade's motion for rehearing was denied by this Court.

¶2. On February 17, 2000, the trial court held the resentencing hearing on the manslaughter conviction. The trial court sentenced Wade to serve eight years in the custody of the Mississippi Department of Corrections for the offense of manslaughter. Wade now appeals to this Court.

### FACTS

¶3. Simpson was Wade's boyfriend and business partner. Wade and Simpson were co-owners of a night club and lived together in a house next to the night club. Simpson was a cruel and vicious man made worse

when he was intoxicated. Their relationship was one marked by brutality with prior occasions of violence.

¶4. In the early hours of the morning, approximately 3:00 a.m., on October 6, 1996, Wade and two of her female employees were standing outside the night club. Simpson had been drinking straight whiskey all night. His autopsy revealed a blood-alcohol level of 0.27. Simpson was behind the bar serving patrons. Simpson inquired about where the girls had gone. Simpson fired a pistol, striking the back of the building. Wade and the other two women came running into the club.

¶5. Wade and Simpson began arguing. Wade threw a bar stool at Simpson and missed. Simpson attacked Wade and slammed her head against a pool table. The beating was severe. Two patrons managed to separate Wade and Simpson and disarm Simpson, but the two were still trying to get to each other.

¶6. Wade managed to get away from Simpson and left the club with one of her waitresses. Wade went next door to where Wade and Simpson lived together. Wade tried to use the telephone in the house, but the telephone was off the hook in the bar. Wade acquired a gun and went back to the night club.

¶7. Simpson was back behind the bar when Wade entered the club. Wade stated something to the effect of "[y]ou ain't gonna hit on me no more." As Simpson moved toward Wade with a smile on his face, Wade shot him once, resulting in his death.

## STATEMENT OF THE ISSUES

**I. Is the eight year sentence excessive and violative of Wade's constitutional rights?**

**II. Even if there is sufficient evidence to support a judgment for conviction of manslaughter, should a new trial be ordered?**

**III. Did the trial court err by precluding the defense from presenting certain evidence regarding the victim's reputation for violence?**

**IV. Did the trial court err by precluding the defense from presenting certain evidence regarding specific acts of the victim showing his propensity to violence toward the defendant?**

**V. Did the trial court err in restricting the defense impeachment of a government witness on cross-examination?**

**VI. Did the prosecutor engage in misconduct by erroneously defining the concept of reasonable doubt to the venire in a manner that was not corrected by the trial judge, thus prejudicing the defendant's right to a fair trial?**

**VII. Does a person have a right under Mississippi law to obtain a weapon and return to that home or business?**

## LEGAL ANALYSIS

¶8. Wade argues that issues two, three, four, five, six and seven were raised on the prior appeal to the Mississippi Court of Appeals and then by writ of certiorari to this Court but never resolved by either appellate court. These issues were previously considered by the appellate courts and are wholly without

merit on appeal.

¶9. The Court of Appeals specifically listed in its opinion all eight issues raised by Wade on appeal. *Wade*, 724 So.2d at 1007. The Court of Appeals chose to address Wade's second argument of error of whether the evidence was insufficient to support a conviction for murder beyond a reasonable doubt and, at most, supported a conviction of manslaughter. *Id*. at 1009. In discussing whether the evidence supported a conviction for murder or manslaughter, the Court of Appeals also addressed the first assignment of error of whether the evidence was insufficient to demonstrate beyond a reasonable doubt that Wade did not act in self-defense. *Id*. The Court of Appeals stated that:

> While Wade's second assignment of error is outcome determinative, our analysis will also include discussion of her first assignment of error concerning self defense.

¶10. The case came before this Court on writ of certiorari from the Court of Appeals. *Wade*, 748 So.2d at 773. In *Skinner v. State*, 700 So.2d 1183, 1184 (Miss. 1997), this Court relying on Mississippi Rules of Appellate Procedure 17 (f) stated:

> After the Court of Appeals has decided a case, the litigants have a single opportunity to have this Court address possible errors which are amendable to certiorari review. Our decision to grant or deny *certiorari* is not subject to rehearing or reconsideration.

M.R.A.P. 17 (f) reads as follows:

> (f) Reconsideration Not Permitted. Neither an acceptance nor a rejection or a petition for certiorari shall be subject to further pleading by a party for rehearing or reconsideration. Prior to final disposition, the Supreme Court may, on its own motion find that the petition for certiorari was improvidently granted and may dismiss the certiorari proceeding.

This Court stated that "[a]fter a review of this record and careful consideration of the issues, we find that the Court of Appeals decision is correct." 748 So.2d at 773.

¶11. The doctrine of res judicata is a doctrine of public policy designed to avoid the expense of multiplicity of litigation and foster reliance on judicial action by "minimizing possibilities of inconsistent decisions." *Little v. V& G Welding Supply, Inc.*, 704 So.2d 1336, 1337 (Miss. 1997)(quoting *Montana v. United States*, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979)).

¶12. For the doctrine of res judicata to generally be applicable to a proceeding, four (4) identities must be present to prevent relitigation of all issues tried in the prior lawsuit, as well as, all matter which should have been litigated and decided in the initial suit. *Dunaway v. W. H. Hopper & Associates, Inc.*, 422 So.2d 749, 751 (Miss. 1982); *Pray v. Hewitt*, 254 Miss. 20, 179 So.2d 842 (1965); *Golden v. Golden*, 246 Miss. 562, 151 So.2d 598 (1963).

¶13. The four identities are as follows:

(1) identity of the subject matter of the action;

(2) identity of the cause of action;

(3) identity of the parties to the cause of action;

(4) identity of the quality or character of a person against whom the claim is made.

*Dunaway*, 422 So.2d at 751; *Mississippi Employment Sec. Comm'n v. Georgia-Pac. Corp.*, 394 So.2d 299 (Miss. 1981); *Cowan v. Gulf City Fisheries, Inc.*, 381 So.2d 158 (Miss. 1980); *Standard Oil Co. v. Howell*, 360 So.2d 1200 (Miss. 1978).

¶14. Under the principle of law denominated as the doctrine of res judicata, Wade may not relitigate these issues. *See*, *e.g.*, *Holland v. State*, 705 So.2d 307, 325 (Miss. 1997)("We hold that because of the finding of guilt by the prior jury, Holland is barred by res judicata from relitigating the prior jury verdict of guilt and is collaterally estopped in these proceedings from attacking his guilt."); *Jones v. State*, 517 So.2d 1295, 1297 (Miss. 1987)("The three assignments above were covered in the first appeal and were decided adversely to the appellant. That decision constitutes the law of the case and the assignments are barred on the present appeal."), *vacated on other grounds*, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988).

¶15. The only viable issue that is now properly before this Court for consideration is Wade's first designated issue of whether her eight-year sentence in the custody of the Mississippi Department of Corrections imposed by the trial court on resentencing on remand for the conviction of manslaughter is excessive and violative of Wade's constitutional rights. That issue will now be addressed.

## I. Sentence for Manslaughter

¶16. Wade effectively argues three (3) distinct positions in support of her contention that the trial court erred in sentencing Wade to serve an eight-year sentence. The three (3) arguments presented by Wade are as follows:

A. Wade contends that she could not receive a sentence greater than of a proposed plea agreement for a five (5) year sentence to serve only one year in prison with four suspended which she rejected.

B. Wade contends that her trial counsel attorney, Travis Buckley, provided her ineffective assistance because he failed to explain the plea bargain to her.

C. Wade contends that the eight-year sentence was improper, excessive and disproportionately harsh punishment.

¶17. Each of these arguments will be addressed individually for purposes of clarification.

### A. Plea Bargain

¶18. Wade argues that the trial court is bound not to impose a sentence over what would have been imposed had a plea of guilty been entered. Wade cites *McGilvery v. State*, 497 So.2d 67, 69 (Miss. 1986), in support of her contention. In *McGilvery*, quoting *Pearson v. State*, 428 So.2d 1362, 1364 (Miss. 1983), this Court stated:

It is absolutely impermissible that a trial judge imposing sentence enhance the sentence imposed because the defendant refused a plea bargain and put the state and the court to the trouble of trial by a jury. Plea bargaining most assuredly is a valuable practice.

¶19. In *McGilvery*, the Court faced a different situation than that which exists in the case at bar. In *McGilvery*, Sherman McGilvery was convicted of the crime of armed robbery and sentenced to serve 45 years. Fitzgerald Tanner was the trigger man in the same armed robbery. Tanner pled guilty to the armed robbery and was sentenced for 25 years as opposed to McGilvery's 45 year sentence. This Court was concerned about the disparity between the two sentences.

¶20. In the case sub judice, the situation in *McGilvery* does not exist. While the practice of plea bargaining is a vital procedure, it does not exist to guarantee a defendant sentencing outcome if the jury verdict does not favor the defendant. The trial court is not bound by the plea agreement offered or recommended by the State. *Martin v. State*, 635 So.2d 1352, 1356 (Miss. 1994). This Court stated that "[g]enerally speaking, a trial court is not bound to accept a defendant's guilty plea or enforce a plea agreement reached between the prosecutor and defendant." *Moody v. State*, 716 So.2d 592, 594 (Miss. 1998). *Accord*, *State v. Adams County Circuit Ct.*, 735 So.2d 201, 204 (Miss. 1999).

¶21. This Court has on "numerous occasions upheld a trial court's decision to refuse to accept a guilty plea where the defendants have either asserted viable defenses or insisted on their innocence." *Moody*, 716 So.2d at 594. *See*, *e.g.*, *Beard v. State*, 392 So.2d 1143 (Miss. 1981)(finding the trial court acted within its sound discretion in rejecting a defendant's guilty plea where he continued to proclaim his innocence, but all the while urged the trial court to accept a guilty plea); *see also Williamson v. State*, 388 So.2d 168 (Miss. 1980)(holding that defendant's statement at the plea proceeding clearly indicated defenses to crime charged).

¶22. The trial judge's decision to accept or reject a plea is within the exercise of sound judicial discretion. Miss. Code Ann. § 99-15-53 (2000); *Moody*, 716 So.2d at 594; *Martin v. State*, 635 So.2d 1352 (Miss. 1994). However, when a "trial court has discretion in a matter, [it is] impl[ied] that there is a limited right to be wrong ." *Burkett v. Burkett*, 537 So.2d 443, 446 (Miss. 1989). At the resentencing on the conviction of manslaughter, nothing in the record demonstrated that the alleged offer was ever brought to the trial court's attention.

¶23. Wade is asking this Court to find that if defendant decides to reject a plea agreement and exercise the right to a jury trial, then the option offered under the plea agreement must remain in effect and cannot be withdrawn. This argument is ludicrous and would have the effect of eliminating the practice of plea bargaining. It is ridiculous to believe that the trial court can never impose a sentence greater than that of the rejected plea agreement. This would allow the defendant to have the opportunity to exercise his right to a jury trial with no risk. That would totally eliminate the incentive for plea bargaining and change the operation of every circuit court in the state.

## B. Ineffective Assistance of Counsel

¶24. Wade contends that her trial counsel, Travis Buckley ("Buckley"), rendered ineffective legal assistance by allegedly refusing to advise her whether she should accept the proposed plea offer which Wade rejected. By her own affidavit dated January 26, 2000, Wade alleged that prior to her trial in 1997, a plea bargain was offered to her for a five-year sentence, with four years suspended, and one year to serve. Wade alleged in her affidavit that Buckley said he could not help her decide what to do and walked out of the room.

¶25. Wade contends that the act of ineffective counsel occurred prior to the trial from which Wade was

found guilty of murder. On the original direct appeal on the murder conviction, Wade did not raise the issue of ineffective assistance of counsel. This case is now back on appeal before this Court from the resentencing required by this Court on the conviction of manslaughter. *Wade*, 748 So.2d at 771. Nothing in the record reflects that any new plea bargain was offered by the State on resentencing.

¶26. The United States Supreme Court stated that "our concern with the quality of counsel's performance in advising a defendant whether to plead guilty stemmed from the more general principle that all 'defendants facing felon charges are entitled to the effective assistance of competent counsel.'" *Hill v. Lockhart*, 474 U.S 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)(quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)).

¶27. The United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish such a claim, a defendant must show that "counsel's representation fell below an objective standard of reasonableness" and that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687-88, 694, 104 S.Ct. at 2065, 2068. Furthermore, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691, 104 S.Ct. at 2067. Wade has not shown how her counsel's alleged failure to explain the plea bargain would have affected the outcome of the case.

¶28. Here, Wade did not plead guilty but rejected the alleged plea and stood trial before a jury. The conviction of the jury was reversed and remanded by this Court as a conviction of manslaughter. The trial court would not have been bound to accept any plea recommendations by the State. *Moody*, 716 So.2d at 594. There was no plea agreement entered into by the trial court that Wade rejected.

¶29. This issue is without merit and merely an attempt by Wade to grasp at any argument possible to force this Court to vacate her sentence for manslaughter. Nothing changes the fact that Wade shot and killed Simpson. Wade has repeatedly argued that she was not guilty of murder or manslaughter in that she was defending herself from Simpson and continues to argue that she not serve any time for the crime.

¶30. Wade on the prior appeal to the Court of Appeals moved the Court of Appeals for rehearing and then this Court by writ of certiorari and motion for rehearing contesting this Court's finding of manslaughter overturning the conviction of murder arguing that she was not guilty by reason of self-defense. Even on this appeal before this Court, Wade again contends that the Court should reconsider the issue of self-defense. Wade has never claimed that she was guilty of either murder or manslaughter. Nothing in the record reflects that Wade would make an admission of guilt.

### C. Improper and Excessive Sentence

¶31. Wade argues that even if the facts show that a jury could find her guilty of manslaughter, the facts do not remotely justify a sentence confining her to eight years' imprisonment, eighty-five (85%) of which must be served before any opportunity for release. Wade contends that the sentence is disproportionate, arbitrary and excessive and should be vacated.

¶32. The Eighth Amendment to the United States Constitution, which applies to the States through the Fourteenth Amendment of the United States Constitution, provides that:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

The United States Supreme Court in ***Harmelin v. Michigan***, 501 U.S. 957, 965, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836 (1991), rejected that the Eighth Amendment provided a proportionality guarantee. The "drafters of the Declaration of Rights did not explicitly prohibit 'disproportionate' or 'excessive' punishments. Instead, they prohibited punishments that were 'cruel[l] and unusual[l].'" ***Id.*** at 967, 111 S.Ct. at 2687.

¶33. The fact that "severe, mandatory penalties may be cruel, they are not unusual in the constitutional sense."***Id***. at 994, 111 S.Ct. at 2701. The United States Supreme Court in ***Harmelin***, stated that "[t]here can be no serious contention that a sentence which is not otherwise cruel and unusual becomes so simply because it is mandatory." ***Id.***

¶34. In ***Wilkerson v. State***, 731 So.2d 1173, 1183 (Miss. 1999), this Court following ***Hoops v. State***, 681 So.2d 521, 538 (Miss. 1996)(quoting ***Smallwood v. Johnson***, 73 F.3d 1343, 1347 (5th Cir. 1996), stated in light of ***Harmelin***, it appears that a guarantee of proportionality in the Eighth Amendment applies only when the "comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality'." This Court has held that apart from a sentence of life in prison without the possibility of parole or a sentence which is manifestly disproportionate to the crime committed, an extended proportionality analysis is not required by the Eighth Amendment when there is an allegation of cruel and unusual punishment. ***Barnwell v. State***, 567 So.2d 215, 221 (Miss. 1990).

¶35. This Court in ***Stromas v. State***, 618 So.2d 116 (Miss. 1993), addressed the situation where a sentence was within the prescribed statutory limits. In ***Stromas***, this Court stated:

> Though no sentence is "per se" constitutional, this Court, in the context of our habitual statutes, as well as in sentencing other offenders, has recognized the broad authority of the legislature and trial court in this area and had repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.

***Id***. at 221-22.

¶36. Wade acknowledges in her argument that trial judges have discretion in imposing sentences. This Court has held that sentencing is within the discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute. ***Hoops***, 681 So.2d at 537. *See **Johnson v. State***, 666 So.2d 784, 797 (Miss. 1995)("generally this Court will not review the sentence if it is within statutory limits"); ***Fleming v. State***, 604 So.2d 280, 302 (Miss. 1992)("general rule in this state is that a sentence cannot be disturbed on appeal as long as it does not exceed the maximum term allowed by statute.").

¶37. Miss. Code Ann. § 97-3-25 (2000), states:

> Any person convicted of manslaughter shall be fined in the sum not less than five hundred dollars, or imprisoned in the county jail not more than one year, or both, or in the penitentiary not less than two years, nor more than twenty years.

¶38. In the case sub judice, Wade was sentenced to serve eight years in the custody of the Mississippi Department of Corrections. She could have received a sentence of twenty years imprisonment. Miss. Code Ann. § 97-3-25.

¶39. Circuit Judge Lamar Pickard questioned Wade as to whether she considered what she had done to Simpson wrong. Wade affirmed in response. Judge Pickard in imposing sentence stated:

> I disagree with your attorney. You are a criminal. And what you did was wrong, and that cannot be excused, it cannot be forgiven by this Court. I owe an obligation to the people of this district to sentence people and punish people for what they have done that was wrong. You took a person's life, and the jury had decided you did not act reasonably, and that assertion of self defense, it was not reasonable, and I do not disagree with the jury; do you understand that? All right
>
> For the offense of manslaughter as determined by a jury and by the Mississippi Supreme Court, I hereby sentence you -- and I'm not going to sentence you to the maximum sentence. And I understand and have reviewed all of these letters, and the state has asked for a maximum sentence, and I do not believe that is appropriate at this time, but neither do I believe that probation or house arrest or something of that nature is appropriate either. I feel you should serve a prison sentence.
>
> For the offense of manslaughter, I hereby sentence you to serve eight years in the custody of the Mississippi Department of Corrections, and there is no need to reserve jurisdiction in this case. That will be the order of this Court, and I'll remand you to the custody of the Mississippi Department of Corrections.

¶40. Wade did not receive the maximum sentence. The trial court did not abuse its discretion in imposing the eight-year sentence.

## CONCLUSION

¶41. For these reasons, the judgment of the Claiborne County Circuit Court is affirmed.

¶42. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF EIGHT (8) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**SMITH AND DIAZ, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. BANKS, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND COBB, J.**

**BANKS, PRESIDING JUSTICE, CONCURRING:**

¶43. I concur in the result reached by the plurality. I write separately, however, because I disagree with the path taken to that result.

¶44. In my view, res judicata does not apply to prevent us from addressing whether the evidence was sufficient to allow a fair-minded jury to reach a guilty verdict. The related but less restrictive concept of the "law of the case" is applicable. This Court has observed, concerning the law of the case doctrine, that

> [w]e do not think . . . that this rule is so fixed and binding upon the court that it may not depart from its former decision on a subsequent appeal if the former decision in its judgment after mature consideration is erroneous and wrongful and would lead to unjust results. Where the facts are the same, and where there has been no change of conditions or situations as that a change of decision

would work wrong and injustice, the court may, on the subsequent appeal, correct its former decision where it is manifestly wrong.

*McDonald's Corp. v. Robinson Indus*., *Inc.,* 592 So.2d 927, 937 (Miss. 1991) (quoting *Brewer v. Browning*, 115 Miss. 358, 364, 76 So. 267 (1917)).

¶45. In similar circumstances we have observed that:

[a]s we said in *Leatherwood v. State*, 539 So.2d 1378, 1382 (Miss. 1989), "It is axiomatic that a decision on a question of law decided on a former appeal becomes the law of the case, whether the case be civil or criminal, and will be adhered to on a subsequent trial and appeals of the same case involving the same issues and facts." We will deviate from this posture only where it is demonstrated that our former decision is "palpably and obviously wrong and results in a grave injustice." *Holcomb v. McClure*, 217 Miss. 617, 621, 64 So.2d 689, 691 (1973). Nicolaou raised the weight and sufficiency of the evidence in *Nicolaou I* and has raised it again on the current appeal, and the decision on the sufficiency of evidence in *Nicolaou I* is the law on the current appeal.

This Court in *Nicolaou I* concluded that there was ample evidence for the jury to have concluded that Poole died from the brutality inflicted by the defendant and that there was no lawful excuse or mitigating circumstances. *Nicolaou I,* 534 So.2d at 172. That conclusion is not "palpably and obviously" wrong and will not be revisited.

*Nicolaou v. State*, 612 So.2d 1080, 1083 (Miss. 1992).

¶46. In my view, then, res judicata is not a bar to this Court looking anew at the question of the sufficiency of the evidence, as Justice Mills's dissent would have it. I do not agree, however, that such a review leads to the conclusion that our former decision was "palpably and obviously" wrong. The jury was instructed on the issue of self-defense. It rejected that claim. While there is much merit in the argument advanced in the dissent, I cannot say that the jury's rejection of self-defense in these circumstances lacks any evidentiary support.

**WALLER, J., JOINS THIS OPINION.**

**MILLS, JUSTICE, DISSENTING:**

¶47. I initially voted with the majority in our prior decision in this case, *Wade v. State*, 748 So.2d 771 (Miss. 1999). I assumed the trial court sentence on remand would be tailored to fit complete justice. I find I can no longer support the verdict entered in this cause.

¶48. I understand the majority's refusal to address the bulk of Wade's argument due to a procedural bar. I would, however, circumvent the bar and rule in Wade's favor based on plain error. The judge and jury got it wrong. The facts of this case support a verdict of self defense.

¶49. Wade was victimized by Simpson's abuse for four years prior to the shooting. On the night of the shooting, she was standing outside the bar with two of her employees. Simpson, who had been drinking straight whiskey for several hours, fired a gun into the wall just to get the women to come inside. When Wade came inside, Simpson attacked her and beat her head against the pool table. Her head hit the table with such force that a sign fell off the wall behind the pool table and golf-ball sized lumps appeared on her

head. When Simpson released Wade, Wade struggled with Simpson for the telephone which fell to the floor. Simpson grabbed Wade's head again and resumed beating it on the table. One of the witnesses attempted to pull Simpson off Wade. As Simpson was pulled, he pulled Wade to the floor by the hair of her head. Another man who saw Simpson reaching for the pistol stuck into the back of his pants removed the gun and placed it on the bar. Wade was unaware that Simpson had been disarmed and believed that he still had the gun. Wade escaped next door to the couple's home and attempted to call for help, but the telephone in the bar connected to the same phone line had been knocked off the hook during the fight. Wade was unable to leave the premises by car because her car keys were in Simpson's pocket. Wade acquired a gun and returned next door to the night club. She stood in front of Simpson pointing the gun at him. All of the witnesses to the shooting agreed that Simpson moved towards Wade at that point. Wade shot once and then fell upon Simpson crying and hugging him.

¶50. It was clearly reasonable for Wade to believe that she was in danger of being seriously harmed as Simpson approached her immediately prior to the shooting. When a defendant asserts self-defense, the prosecution has the burden to prove the absence of self-defense beyond a reasonable doubt. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). The prosecution failed to do so here.

¶51. Justice McRae stated the following in his dissent in our prior decision in this case:

> In this case, there was little Wade could do to escape Simpson's abuse. She could not leave the premises since she was unable to call for help and the keys to her car were in Simpson's pocket. If she stayed in the cabin or outside, she had less protection because there was no one else there. When she reentered the bar with a gun for protection, Wade shot Simpson only after he started towards her. Given the brutal beating she had just suffered at his hands, she reasonably feared continued violence. If this was not self defense, it is hard to believe that self defense exists in Mississippi anymore. . . .

*Wade v. State*, 748 So. 2d at 779 (McRae, J., dissenting). I agree and, therefore, must respectfully dissent.

**McRAE, P.J., AND COBB, J., JOIN THIS OPINION.**