997 So.2d 1001 (2009)
Roderick Rashael LEWIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01788-COA.
Court of Appeals of Mississippi.
January 6, 2009.
*1003 George T. Holmes, Jackson, attorney for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Roderick Rashael Lewis was convicted of murder and armed robbery following a jury trial in the Circuit Court of Warren County. He was sentenced to serve two consecutive life sentences in the custody of the Mississippi Department of Corrections. Lewis now appeals his convictions and sentences claiming that: (1) the circuit court erroneously denied Lewis's motions for a directed verdict and for a judgment notwithstanding the verdict; (2) the circuit court improperly sentenced Lewis to consecutive life sentences without affording him a sentencing hearing; (3) the jury's verdict was contrary to the overwhelming weight of the evidence; and (4) Lewis was denied effective assistance of counsel at trial and on appeal. Finding no error, we affirm.

FACTS
¶ 2. Lewis was an employee of the victim, Kenneth Williamson, who owned a roofing business in Vicksburg. Williamson caught Lewis sleeping on the job and docked Lewis's pay. On July 27, 2005, Lewis and three other individualsDereck Hall, Joshua Warren, and Joshua Bee drove from Rolling Fork down to Vicksburg. Hall, Warren, and Bee each testified that Lewis was taking them to meet Williamson in hopes that he would offer them a job with his roofing business.
¶ 3. Williamson invited the group into his home and, after a brief conversation, offered them all employment. Lewis then asked Williamson for some money, but Williamson replied that he did not have any cash. Instead, Williamson and Hall drove to a nearby gas station, and Williamson bought gas and cigarettes for the group's return to Rolling Fork. They then returned to Williamson's home.
¶ 4. Williamson decided that he was going to bed, and he told the group that they were welcome to spend the night so they would not have to drive all the way back to Rolling Fork. He then retired to his bedroom, while the others remained in the living room.
¶ 5. According to Warren's testimony at trial, Lewis then told Warren that he was going to rob Williamson. Warren tried to dissuade Lewis, telling him that Williamson had no cash and that they needed him for their employment. Hall, Warren, and Bee began to exit the trailer when they saw Lewis head toward Williamson's bedroom. They heard gunshots on their way out, and Bee glanced back and saw Lewis taking Williamson's wallet out of his pocket. They headed for the truck, and as they were trying to back out, Lewis jumped in the front passenger seat.
¶ 6. There was testimony that Lewis was acting "hyped up," and some witnesses saw blood on Lewis and a gun in his hand. They went back to Rolling Fork and returned the truck that they had borrowed to drive to Vicksburg. Williamson did not show up for work the next morning, so his crew became worried. Lewis was among the crew that had shown up for work that morning. Lewis, Steven Lewis (Roderick Lewis's brother), Harvey Lee Davis, and *1004 Nick Blackmore drove from the work site to Williamson's home to check on him. They found Williamson dead in his bedroom and called law enforcement to the scene.
¶ 7. The autopsy revealed that Williamson was shot eight timessix shots to the back of the head, one shot to the neck, and one shot through his left arm. Gunshot residue was found on the back of Lewis's right hand, and Lewis's blood was found inside the truck. Lewis testified that he was with his girlfriend, Lashunda Lindsey, at the time of the murder. However, Lindsey did not fully corroborate Lewis's story.
¶ 8. There was testimony by various witnesses in Rolling Fork that Lewis had threatened to rob Williamson earlier during the day of the murder. Lewis testified that he only threatened to "beat [Williamson's] ass" in a joking manner. Lewis said that his blood was found in the truck because he went with the others to buy marijuana that night and an old wound began to bleed while he was in the truck. He denied ever going to Vicksburg, testified that Williamson was a father figure to him, and denied murdering Williamson.
¶ 9. The jury found Lewis guilty of murder and armed robbery. The jury's verdict unanimously imposed a life sentence for the crime of armed robbery. Thereafter, the circuit court sentenced Lewis to life imprisonment for Count I, murder, and life imprisonment for Count II, armed robbery, to be served consecutively. Lewis filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, which was denied.
¶ 10. The Office of Indigent Appeals, representing Lewis on appeal, filed a brief pursuant to Lindsey v. State, 939 So.2d 743, 748(¶ 18) (Miss.2005) indicating that there were no arguable issues to raise on appeal. In accordance with Lindsey, Lewis filed a supplemental pro se brief setting forth the issues we discuss below.

ANALYSIS

1. Whether the circuit court erred in denying Lewis's motions for a directed verdict and for a judgment notwithstanding the verdict.
¶ 11. Lewis first argues that his motion for a directed verdict should have been granted because the State failed to prove Lewis's guilt beyond a reasonable doubt. When reviewing a motion for a directed verdict, the Court looks to the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). All of the evidence must be construed in the light most favorable to the prosecution. Id. "We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citations omitted).
¶ 12. Lewis argues that the State failed to link him to the crime via DNA samples, fingerprints, or gunshot residue. However, there was ample eyewitness testimony and circumstantial evidence for the jury to consider. There was testimony that Lewis was angry at Williamson for docking his pay. Some witnesses heard Lewis state his intention to rob Williamson shortly before the murder occurred. There was testimony by witnesses who saw Lewis, along with Hall, Warren, and Bee, in the borrowed truck headed to Vicksburg on the night of the murder. Hall, Warren, and Bee all testified that Lewis went back to Williamson's bedroom alone, and shots were fired. Warren testified that Lewis stated he was going to rob Williamson just before Lewis went back to Williamson's *1005 bedroom. Further, Bee stated that he glanced back on his way out and saw Lewis remove Williamson's wallet from his pocket.
¶ 13. Lewis's brother, Steven, testified that Lewis admitted shooting Williamson. Further, there was a slight amount of gunshot residue found on Lewis's hand. Despite Lewis's argument that he was not connected to the crime through blood or DNA samples, a review of the evidence in the light most favorable to the prosecution shows that there was sufficient evidence for a reasonable juror to find Lewis guilty of the murder and armed robbery of Williamson.
¶ 14. Secondly, Lewis contends that his motion for a judgment notwithstanding the verdict was improperly denied because the State failed to prove every essential element of armed robbery because there was no cash found in Williamson's wallet. We review a motion for a JNOV under the same standard as a directed verdict. Bush, 895 So.2d at 843(¶ 16).
¶ 15. Armed robbery is defined by Mississippi Code Annotated section 97-3-79 (Rev.2006), which provides:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury....
¶ 16. Lewis claims that the State did not prove that he took cash money or other personal property from Williamson. However, his claim is contrary to the evidence presented to the jury. Bee testified that he saw Lewis remove Williamson's wallet from Williamson's pocket while Williamson was lying on the bed. Further, the State introduced photographs into evidence which showed the wallet lying out on the bed just behind Williamson's back. This evidence, when viewed in the light most favorable to the prosecution, is sufficient to allow a reasonable juror to conclude that Lewis was guilty of armed robbery. Accordingly, this issue has no merit.

2. Whether the circuit court erred by sentencing Lewis to consecutive life sentences without affording him a sentencing hearing.
¶ 17. Lewis contends that the circuit court erred in allowing his two life sentences to run consecutively without affording him a sentencing hearing. There was no objection made at trial, and this issue was not raised in his motion for a new trial, but Lewis argues that the plain-error rule should be invoked.
¶ 18. Rule 10.04(B) of the Uniform Rules of Circuit and County Court addresses sentencing hearings: "If the defendant is found guilty of an offense for which life imprisonment may be imposed, a sentencing trial shall be held before the same jury, if possible, or before the court if jury waiver is allowed by the court." However, in this case, there was no sentencing discretion on the part of the circuit court. The pertinent statute on armed robbery provides that every person found guilty of armed robbery as defined by the statute "shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury." Miss.Code Ann. § 97-3-79. The jury returned its verdict and imposed a life sentence for the crime of armed robbery. The circuit court had no reason for a sentencing hearing as there was no discretion to modify the jury's sentence. See Lewis v. State, 765 So.2d 493, 505(¶ 48) *1006 (Miss.2000) (holding that URCCC 10.04(B) "requires a sentencing hearing only where a life imprisonment sentence is optional").
¶ 19. Further, by statute, the circuit court had the discretion to determine whether Lewis's sentences would run consecutively or concurrently. See Miss.Code Ann. § 99-19-21 (Rev.2007). We find that the circuit court did not abuse his discretion in sentencing Lewis to consecutive life sentences. Accordingly, this issue has no merit.

3. Whether the jury's verdict was contrary to the overwhelming weight of the evidence.
¶ 20. Lewis further argues that the verdict was contrary to the overwhelming weight of the evidence. Specifically, he claims there was no evidence directly linking him to the crime. Again, he cites the lack of DNA, fingerprints, and gunshot residue.
¶ 21. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, [the appellate court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18). The evidence is "weighed in the light most favorable to the verdict." Id. "[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (citations omitted). If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 22. Again, Lewis's claim fails because he disregards much of the evidence against him. Based on the numerous eyewitnesses and their testimonies regarding the threats Lewis made against Williamson, the gunshots, and Bee's testimony that Lewis took Williamson's wallet, the verdict is in no way contrary to the weight of the evidence. Thus, this issue has no merit.

4. Whether Lewis was denied effective assistance of counsel at trial and on appeal.
¶ 23. Finally, Lewis claims that he was denied effective assistance of counsel by both his trial and appellate attorneys. We review claims of ineffective assistance of counsel under the Strickland standard that requires a defendant to show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with the defendant to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
¶ 24. Lewis's only argument regarding his trial counsel is that he was abandoned by counsel following the trial. In actuality, his trial counsel withdrew so that the Office of Indigent Appeals could be substituted as his counsel on appeal. Lewis has shown no deficiency on the part of his trial counsel.
¶ 25. He further argues that he was abandoned by his counsel on appeal because his appellate counsel filed a brief pursuant to Lindsey, stating that there were no arguable issues to present to this Court. Specifically, he claims that if his trial counsel could find seven issues to *1007 raise in the motion for a new trial, then his appellate counsel should have at least been able to raise those same issues on appeal.
¶ 26. However, Lindsey specifically sets forth the procedure to be followed when counsel for an indigent criminal defendant does not believe the case presents any arguable issues on appeal. Here, Lewis's appellate counsel precisely followed this procedure. Thus, Lewis fails to present a deficiency on the part of his counsel on appeal. Accordingly, this issue has no merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNT I, MURDER, AND COUNT II, ARMED ROBBERY, AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR EACH COUNT, WITH THE SENTENCE FOR COUNT I TO RUN CONSECUTIVELY TO THE SENTENCE FOR COUNT II, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.