ISHEE, J.,
for the Court:
MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The motion for rehearing is denied. We withdraw our original opinion and substitute this modified opinion.
¶ 2. Jacob Simmons died from a gunshot wound to the back of the head in the early morning hours of April 23, 2009. William Austin Branch was indicted by an Attala County grand jury for Simmons’s murder and was later tried in the Attala County Circuit Court. He was found guilty and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Branch now appeals on numerous grounds. We have combined Branch’s assertions on appeal into the following categories: (1) the sufficiency of the evidence to support the verdict, (2) Simmons’s prior bad acts and aggressive behavior, (3) witness tampering and witness credibility, (4) the cumulative effect of the alleged errors, and (5) expansion of the record. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. On the evening of April 22, 2009, Simmons and Branch attended a gathering at a friend’s house in Kosciusko, Mississippi. While there, Simmons and Branch became engaged in a verbal and physical altercation regarding the death of Branch’s uncle. Simmons claimed he had been informed Branch had implied that Simmons was somehow involved in his uncle’s demise. Branch assured Simmons that he was not responsible for the rumors and asserted that C.J. Frazier was the *648 party responsible for smearing Simmons’s name.
¶ 4. The men called Frazier and discussed the rumor issue with him. Unsatisfied with the conversation, Simmons and several other men from the gathering decided to pay Frazier a visit. Although disputed, Branch claims Simmons threatened bodily injury on him if he refused to drive the men to Frazier’s house. Branch asserted that Simmons continually attempted to intimidate him throughout the evening by insinuating the threat of bodily harm if he did not cooperate with Simmons. Branch testified he was in fear of imminent physical harm from Simmons during the course of the evening.
¶ 5. As such, Branch drove Simmons, C.C. McClellan, and Greg Bowers to Frazier’s house. Simmons and Bowers exited the vehicle and attempted to confront Frazier. After Frazier refused to exit his house, the men left and returned to the gathering.
¶ 6. Shortly thereafter, McClellan asked to be taken home. The four men got back in the truck and took McClellan to his house. Branch testified that upon leaving McClellan’s house, either Simmons or Bowers repeatedly patted a tire iron against his palm in a threatening manner, encouraging Branch to cooperate with whatever Simmons chose to do.
¶ 7. The three remaining men decided to drive to Branch’s nearby property where he kept cattle. Shortly thereafter, Branch stopped at his sister’s trailer, which was located less than a mile from the property. She and her boyfriend, Brad Tubby, were present at the trailer when the men arrived, and, with Tubby’s permission, Branch retrieved a .38 special revolver from Tubby’s truck before leaving the trailer site.
¶ 8. Upon reaching the property, Branch observed a herd of cattle blocking the driveway and realized he had forgotten to lock the property’s gate earlier in the day. Branch repeatedly honked the truck’s horn, and the cattle began moving toward the property’s pond. Branch exited the vehicle to continue corralling the cattle toward the pond and away from the driveway. The other two men stayed in the truck.
¶ 9. When Branch had almost reached the pond, he heard Simmons exit the truck. Bowers testified that Branch instructed Simmons to exit the vehicle to help him with the cattle. However, Branch testified he suddenly heard Simmons behind him, running toward him, and simultaneously accusing him of being a “snitch.” Branch claimed he turned with his gun drawn and saw Simmons reach toward his left pocket where Branch thought he remembered Simmons placing a knife earlier in the evening. Accordingly, when Simmons reached toward his left pocket, Branch drew Tubby’s .38 special revolver and fatally shot Simmons in the back of the head.
¶ 10. Branch quickly returned to the truck and allegedly demanded to know why Bowers and Simmons were trying to kill him. Bowers responded that he had nothing to do with any plot to kill Branch and then quickly fled the scene of the crime. Branch returned to Simmons’s body and confirmed that Simmons was dead. He then called his sister, recounted the recent events, and asked her to call an ambulance.
¶ 11. Shortly thereafter, Branch arrived at his sister’s trailer. He handed Tubby the .38 special revolver, and Tubby drove back to the scene of the crime. Emergency responders and local authorities arrived at the property. Tubby then led the authorities to the trailer where Branch was *649 located and gave them the .38 special revolver. Branch was discovered changing his clothes. When questioned by authorities regarding his prior attire, Branch produced a t-shirt with blood stains on the front of it. Authorities detained Branch and returned to the property to searched the premises. No knife or any other weapon was found on Simmons’s person or in the immediate area.
¶ 12. Branch was indicted for Simmons’s murder, and a trial took place in the circuit court in 2010. Branch asserted self-defense as justification for the shooting. In support thereof, he testified that he feared for his safety during the evening in question and that he was certain Simmons was about to harm him when Simmons reached toward his left pocket. Branch further stated that Simmons “must have ducked” when Branch pulled the gun, which would explain why Simmons was shot in the back of the head.
¶ 13. In contradiction to Branch’s testimony, the State presented Dr. Amy Grusz-eeki, a forensic pathologist, who testified that the angle of the bullet negated Branch’s theory that Simmons ducked. Dr. Gruszecki testified that the bullet entered Simmons’s head in a straight perpendicular shot, meaning Simmons could not have been ducking or the bullet would have entered his head at an angle.
¶ 14. The State also called Bowers to the stand to testify regarding his observation of the events on the evening in question. After Bowers testified on behalf of the State, he was instructed to leave the courtroom under the rule of sequestration.[1] Branch then presented his case-in-chief wherein he testified on his own behalf. Deanna Strait remained in the courtroom and observed his testimony. Directly thereafter, Strait discussed Branch’s testimony with Bowers, who was awaiting being recalled to the stand by the defense.
¶ 15. The issue was brought before the circuit court which questioned Strait regarding her discussion with Bowers. Strait testified that she was unaware her conversation with Bowers regarding Branch’s testimony was prohibited. The circuit court then instructed Strait to leave the courthouse permanently and also permitted Branch’s defense counsel to examine Bowers on recall regarding his understanding of Branch’s testimony.
¶ 16. The trial continued, and Branch attempted to call Jay Summerlin to the stand. Through Summerlin’s testimony, Branch’s counsel sought to establish that Simmons had previously told Summerlin that he was going to kill Branch. However, the circuit court prohibited Summer-lin’s testimony after determining that it was double hearsay.
¶ 17. At the conclusion of the trial, Branch was convicted of murder and sentenced to life in the custody of the MDOC. He filed several post-trial motions, including a motion for a directed verdict, a motion for a judgment notwithstanding the verdict (JNOV), and a motion for a new trial. In these motions Branch provided the circuit court with conclusions from his own forensic expert, Dr. James Cook, who opined that the bullet in question entered Simmons’s head at an angle and not in a perpendicular line. Dr. Cook was presented to rebut Dr. Gruszecki’s testimony and support Branch’s theory of self-defense. All of Branch’s post-trial motions were denied. Branch then filed motions for reconsideration, which were also denied. Aggrieved, he appeals. Finding no revers *650 ible error, we affirm the circuit court’s judgment.
DISCUSSION
I. Sufficiency of the Evidence
■ ¶ 18. Branch asserts the circuit court erred in its failure to grant his motions for a directed verdict and a JNOV. Branch’s motion is grounded in his assertion that the verdict was not supported by the evidence. In such circumstances, “[w]e are authorized to reverse only where ... the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.” McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citations omitted).
¶ 19. Having reviewed the record, we disagree with Branch’s claim that a reasonable jury could not have found Branch guilty of murder. At trial, the State provided evidence that Branch and Simmons wei'e involved in a verbal and physical altercation resulting in tension between the men that lasted the remainder of the evening in question. The State further showed that Branch fatally shot Simmons in the back of the head.
¶20. In response to the State’s evidence that Simmons was shot in the back of the head, Branch claimed that Simmons “must have ducked” when Branch reached for the gun. However, the State’s forensic expert, Dr. Gruszecki, testified that after examining the evidence, she concluded the bullet entered Simmons’s head in a perpendicular fashion, or a straight line, thereby negating Branch’s claim that Simmons ducked.
¶ 21. Branch did not provide the jury with a rebuttal expert to contradict Dr. Gruszecki’s claims. Branch merely relied on his own testimony to explain to the jury his recollection of the shooting. No scientific evidence was presented to support Branch’s assertion that Simmons ducked or that Dr. Gruszecki’s conclusions were erroneous. As such, we cannot say from the evidence presented that the jury had no choice but to find Branch not guilty. This assertion is without merit.
¶22. Branch also asserts that the evidence was insufficient to support a guilty verdict for murder and, at most, he is only guilty of manslaughter. He relies heavily on his theory of imperfect self-defense and submits he was under duress at the time of the killing. He further claims that he was well founded on his belief that Simmons intended to harm him and that his reaction to Simmons was justified.
¶ 23. Manslaughter is defined as:
“[Tjhe killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense .... ” Miss.Code Ann. § 97-3-35 (Rev.1994).... The theory is “that the defendant killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in oi’der to prevent [the attacker] from inflicting death or great bodily harm upon him”....
Wade v. State, 724 So.2d 1007, 1011 (¶¶ 11-12) (Miss.Ct.App.1998) (quoting Lanier v. State, 684 So.2d 93, 97 (Miss.1996)).
¶ 24. Nonetheless, as stated above, the jury was presented with evidence that Branch retrieved a .38 special revolver from his sister’s boyfriend prior to driving Simmons to his property and that Branch fatally shot Simmons using the revolver. The jury was also shown evidence of Branch’s self-defense theory. However, this evidence was contradicted by proof regarding the location and trajectory of the bullet wound to the back of Simmons’s *651 head. We disagree that the evidence was insufficient to support a verdict of murder. We find this issue is meritless.
¶ 25. Regardless, Branch requested that the circuit court grant the following two jury instructions, which were ultimately denied:
(1) One who received threats against their [sic] life or person made by another is justified in acting more quickly and taking harsher measures for their [sic] own protection in the event, than would a person who did not receive such threats. Someone who has been threatened or harmed by a person in the past[ ] is justified in acting more quickly or taking greater self-defense measures against that person.
If evidence concerning prior threats and prior acts of violence was known by Austin Branch at the time of the killing, you should consider such evidence in determining who was the aggressor, and the reasonableness of Austin Branch’s fear of death or great bodily injury.
(2) Malice aforethought equates with deliberate design, which generally implies careful and unhurried consideration of the consequences along with calculation, planning[,] and contemplation. Malice cannot be formed at the immediate second of the fatal act.
Deliberate design means intent to kill without authority of law and not being legally justifiable, legally excusable!,] or under circumstances that would reduce the act to a lesser crime.
Malice is necessary for murder and must precede the unlawful act that is being attempted.
If you find that the prosecution failed to prove beyond a reasonable doubt that Austin Branch acted with malice in the killing of Jacob Simmons, then you must find Austin Branch not guilty of murder.
¶ 26. We give “abuse-of-discretion deference to the trial judge’s decision” with regard giving or refusing of jury instructions. Flowers v. State, 51 So.3d 911, 912 (¶ 5) (Miss.2010). “[Proposed instructions should generally be granted if they are correct statements of law, are supported by the evidence, and are not repetitious.” Id. at (¶ 6) (citation omitted).
¶ 27. In support of his argument, Branch references Smith v. State, 463 So.2d 1028, 1029 (Miss.1985) (overruled in part by Ferrell v. State, 733 So.2d 788, 791 (¶ 15) (Miss.1999)), wherein the Mississippi Supreme Court stated:
Another homicide less than murder is the killing of another in the heat of passion, without malice aforethought!,] and is generally referred to as “manslaughter.” It does not justify a homicide as does self-defense but[,] rather[,] reduces the greater crime of murder to the lesser crime of manslaughter because “malice aforethought” is lacking. Manslaughter does not exonerate the homicide but requires a sentence less than that for murder.
¶ 28. We agree with the circuit court’s determination that the instructions Branch wished to submit to the jury are improper statements of the law. Additionally, the form of the instructions make them unfairly leading and prejudicial. The instructions essentially dictate what the jury must determine instead of providing a guide for the jury to make its own decision. A proper instruction presents the case, the applicable law, and nothing more.
¶ 29. In any event, a more appropriate manslaughter instruction was granted by the circuit court, thus affording Branch the opportunity for the jury to consider the lesser offense of manslaughter. Jury Instruction 8 stated, in part: “The Court instructs the Jury that the theory of ‘imperfect self-defense’ provides *652 that an intentional killing may be considered manslaughter if done without malice under a bona fide but unfounded belief that it was necessary to prevent great bodily harm.” We believe this instruction to be a fair and accurate statement of the law. We further believe that this instruction was a proper and fitting one for this case. We hold that the trial court did not err in regard to jury instructions. This argument is without merit.
II. Simmons’s Prior Bad Acts and Aggressive Behavior
¶ 30. Branch also asserts the circuit court erred by not allowing the introduction of evidence about Simmons’s prior bad acts. Specifically, Branch attempted to call Jay Summerlin to the witness stand to testify regarding certain statements Bowers made to Summerlin concerning statements Simmons made to Bowers. The State objected to Summerlin’s testimony on the ground that it would be double hearsay. The circuit court sustained the State’s objection.
¶ 31. We agree with the circuit court’s determination. Mississippi Rule of Evidence 801(c) defines hearsay as “a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted.” Mississippi Rule of Evidence 805 holds that hearsay within hearsay, or double hearsay, may not be introduced unless each of the combined statements is subject to an exception to the prohibition against hearsay. Branch fails to assert a hearsay exception applicable to any of the statements sought to be introduced by Summerlin. Likewise, we fail to see an exception under which Sum-merlin’s testimony would have fallen. This issue is meritless.
¶ 32. Branch also claims the circuit court prohibited the introduction of evidence of Simmons’s past alleged threats and acts of violence. “Our well-settled standard of review for the admission or suppression of evidence is abuse of discretion.” Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2004) (citation omitted). “[T]he decision of the trial judge will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ” Id. (citation omitted).
¶ 33. In support of his argument, Branch directs our attention to Mississippi Rule of Evidence 404(a)(2), which states:
(a) Character Evidence Generally. Evidence of a person’s character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
(2) Character of Victim. Evidence of a pertinent trait or character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor....
¶ 34. We recognize the applicability of Rule 404 to Branch’s arguments. However, Branch has failed to note specifically how the circuit court denied him the opportunity to present evidence that either he exhibited a character of peacefulness or that Simmons was the aggressor. The record is void of an occasion where Branch was prohibited from introducing evidence or testimony pertaining to this matter. Indeed, Branch’s presentation to the jury throughout the trial focused on his theory that Simmons was the aggressor and *653 Branch was acting in self-defense. As such, we find this argument to be without merit.
III. Witness Tampering and Witness Credibility
¶ 35. Branch makes several arguments regarding witness tampering and credibility. First, Branch claims that the circuit court erred in failing to declare a mistrial after learning that Strait, who was present in the courtroom during Branch’s testimony, discussed the testimony with Bowers, who had already testified but was available for recall. To be clear, Branch’s argument is based on the circuit court’s failure to declare a mistrial sua sponte, not the circuit court’s denial of a motion for a mistrial. Branch did not make a motion for a mistrial. The following summarizes the incident before the circuit court:
DEFENSE COUNSEL: Your Honor, during Mr. Branch’s testimony — after Mr. Branch’s — after Austin’s testimony this morning and during, it is apparent that there was a person in the courtroom who, after Mr. Branch’s testimony, went back and relayed the contents of his testimony to Mr. Greg Bowers back in a room that he’s back in. That this would — that there was talk about actually what Austin had testified to. I’m bringing it to your attention because it’s — it would appear that the rule has been violated, if I understand the rule.
THE COURT: Who did this?
DEFENSE COUNSEL: My understanding — and I’ll say that Mr. Greg Bowers is back in this room with Brad Tubby; it was Brad Tubby who told us this information. I don’t know this person, your Honor. My understanding is her name is Deanna Strait. She may be in the courtroom right now.
THE COURT: She is?
COURT CLERK: She’s right outside. Oh, here she is.
DEFENSE COUNSEL: Deanna Strait, your Honor.
THE COURT: Ms. Strait, if you’ll come forward. Have you had some conversations with Greg Bowers about what’s been testified to in here?
DEANNA STRAIT: Yes, sir.
THE COURT: Why?
DEANNA STRAIT: I didn’t know that it was a problem.
THE COURT: You leave the courthouse, and you leave immediately, and you do not come back.
DEANNA STRAIT: Yes, sir.
THE COURT: You’re lucky I’m not locking you up.
DEANNA STRAIT: Yes, sir.
THE COURT: And if [Bowers] is recalled, you can certainly cross-examine him. I mean, you — if you call him as a witness, you can certainly examine him about any statement that may have been told to him about testimony in here. I mean, that’s the only way I know to cure any problem would be for you to ask him questions if he violated the [r]ule of [sequestration.
DEFENSE COUNSEL: Could I just have one moment, Judge?
(PAUSE)
DEFENSE COUNSEL: Your Honor, I apologize to the [cjourt for the delay. I am torn between requesting a mistrial because I think it does put it in a different light to be able to call Mr. Bowers. And, of course, we were intending to call Mr. Bowers to impeach him with Jay Summerlin’s — by trying to bring in Jay’s statement that Greg Bowers made to Jay Summerlin. However, I — I might be remiss, but on consultation with co-counsel, I’m not going to ask for a declaration of mistrial.
*654 THE COURT: That will be fine. We’ll proceed if you’ll bring the jury back in.
¶ 36. With regard to a circuit court’s grant or denial of a mistrial, we have held:
Case law unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable remark. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where serious and irreparable damage has not resulted, the judge should admonish the jury then and there to disregard the impropriety.
Edwards v. State, 856 So.2d 587, 593 (¶ 19) (Miss.Ct.App.2003) (quoting Coho Res., Inc., v. McCarthy, 829 So.2d 1, 18 (¶ 18) (Miss.2002)). Nonetheless, Branch’s defense counsel did not request a mistrial. Concerning allegedly prejudicial instances during trial we have stated:
It is now well settled that when anything transpires dui’ing the trial that would tend to prejudice the rights of [the] defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial.
Morris v. State, 963 So.2d 1170, 1178 (¶ 26) (Miss.Ct.App.2007) (citation omitted). As such, this claim is without merit.
¶ 37. Branch further challenges the circuit court’s denial of his motion for a new trial in which he sought to offer Dr. James Cook, a forensic pathologist, as an expert to rebut the State’s forensic pathologist’s conclusions concerning the trajectory of the bullet that killed Simmons. The circuit court held a hearing regarding Branch’s post-trial motion, and denied the motion. The circuit court also denied defense counsel’s attempt to proffer into evidence Dr. Cook’s testimony.
¶ 38. A motion for a new trial “challenges the weight of the evidence.” Smith v. State, 925 So.2d 825, 832 (¶ 16) (Miss.2006) (citation omitted). Also, we review the grant or denial of a motion for a new trial under an abuse-of-discretion standard. Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). We have determined the evidence was sufficient to convict Branch of murder. Under the same set of facts, the record is void of any evidence that weighs so heavily against the verdict that the circuit court’s denial of Branch’s motion for a new trial was an abuse of the circuit court’s discretion.
¶ 39. Furthermore, we are unaware of any provision under Mississippi law that would support Branch’s theory regarding Dr. Cook’s post-trial testimony. If Branch wished to rebut the State’s forensic pathologist, Branch had every opportunity to present Dr. Cook for the circuit court’s consideration as a rebuttal expert during the trial. Moreover, having reviewed Dr. Gruszecki’s testimony, Branch’s defense counsel failed to make a single objection to any of Dr. Gruszecki’s conclusions and stipulated to her introduction as an expert in the field of pathology. If defense counsel wished to contradict Dr. Gruszecki’s conclusion, defense counsel had every opportunity to act during the trial, at which time the arguments could have been preserved on the record for appeal. A post-trial motion was not the proper vehicle for objecting to and rebutting Dr. Gruszecki’s testimony.
 ¶ 40. In the same vein, Branch asserts that Dr. Gruszecki’s conclusions regarding the trajectory of the bullet did not meet the proper standard of “reasonable medical certainty.” Again, Branch’s defense counsel failed to object to any of *655 Dr. Gruszecki’s testimony and agreed that she was an expert in the field of forensic pathology. Additionally, it appears that defense counsel participated in a discussion with Dr. Gruszecki regarding the trajectory of the bullet and highlighted Dr. Gruszecki’s opinion that the bullet entry was a “straight on shot.” After garnering such information, defense counsel never moved to strike Dr. Gruszecki’s statements or object to the statements either during direct examination or cross-examination. It is well settled that in general the failure to make a contemporaneous objection to an expert’s testimony or a counselor’s questioning waives the issue on appeal. Hampton v. State, 48 So.3d 605, 609 (¶ 12) (Miss.Ct.App.2010) (citing McCain v. State, 971 So.2d 608, 612 (¶ 7) (Miss.Ct.App.2007)). Accordingly, this issue is mer-itless.
¶ 41. Finally, Branch claims the State failed to disclose written statements made by Bowers to the prosecution and that in doing so, the State denied Branch the opportunity to fully defend himself. However, Branch never acknowledges in his brief to which statements he is referring, and he never objected to any of Bowers’s testimony based on the alleged discovery violation. Moreover, the record reflects that Branch’s counsel thoroughly questioned Bowers on cross-examination but never raised the issue of prior undisclosed statements Bowers allegedly made to the prosecution. As discussed previously, the failure to raise a contemporaneous objection during questioning waives the issue on appeal. Hampton, 48 So.3d at 609 (¶ 12) (citation omitted). As such, Branch waived this argument at the trial level, and we will not address it now.
IV. Cumulative Effect of Errors
¶ 42. Branch also asserts that the cumulative effect of the errors he has alleged on appeal mandates a reversal of his conviction, vacation of the sentence imposed, and the grant of a new trial. “The cumulative-error doctrine stems from the doctrine of harmless error ... which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.” Harris v. State, 970 So.2d 151, 157 (¶ 24) (Miss.2007) (citation omitted). None of the errors alleged by Branch warrant reversal. Likewise, we cannot find reversible error in Branch’s combined allegations. This issue is without merit.
V. Expansion of the Record
¶ 43. Lastly, Branch asserts we erred in denying his motion to expand the record to include an affidavit that was made after the appeal was perfected and during the time for the appellate briefs to be drafted. This affidavit appears to show that the affiant knew Bowers and that Bowers told the affiant an account of the facts that occurred on the night of Simmons’s shooting. This account corroborated Branch’s testimony at trial. However, we have nothing before us besides the bare affidavit itself, and there is nothing in the record to show whether the claims in the affidavit have any basis in fact. Therefore, we denied the motion to expand the record to consider the merits of the affidavit. However, we note that if the claims are true, they could form the basis for a claim of either newly discovered evidence or perhaps even a discovery violation. Reviewing the merits of any such claim is not proper for an appellate court because these issues were not reviewed by the trial court. Rather, Branch may request leave to file for post-conviction relief, since this avenue is better suited to examining his claim than direct-appellate review. Havard v. State, 986 So.2d 333, 338 (¶ 19) *656 (Miss.Ct.App.2007). This issue is without merit.
¶ 44. THE JUDGMENT OF THE AT-TALA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, MAXWELL, AND FAIR, JJ„ CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. The rule of sequestration provides that testifying witnesses may be prohibited from entering the courtroom apart from their own testimony to prevent their testimony from being influenced by any evidence presented during the trial.