# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01814-COA

**DARRELL LETEASE FORD A/K/A DARRELL LATEASE FORD A/K/A DARRELL L. FORD A/K/A DARRELL FORD**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF GRATIFICATION OF LUST AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED - 08/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE ISHEE, P.J., CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     Darrell Letease Ford was indicted and convicted of gratification of lust in violation of Mississippi Code Annotated section 97-5-23(1) (Supp. 2015).  The trial court sentenced Ford to fifteen years in the custody of the Mississippi Department of Corrections (MDOC).

¶2.    Ford's appellate counsel filed a brief in compliance with *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), certifying to this Court that the record presented no arguable issues for appeal.  Ford filed a pro se brief, raising various assignments of error.  After a review of Ford's pro se brief and the record, this Court finds that Ford presents no arguable issues, and no supplemental briefing is necessary.  Finding no error, we affirm Ford's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶3.    Eleven-year-old Z.L.[1] had lived with her maternal grandmother, Thalia Ford, and step-grandfather, Ford, since she was in the first grade.  Thaila and Ford, who had been in a relationship for over twenty years, were married six months prior to trial.

¶4.    Shanta Lacey, Ford's biological daughter and Z.L.'s aunt, testified that she had a close relationship with Z.L.[2]  Lacey went to Thalia and Ford's apartment to pick up Z.L.  Lacey went inside, and Z.L. was watching a television show on the computer.  Z.L. told Lacey that she was glad Ford was not there because he would make her get off the computer so he could watch "nasty stuff."  Z.L. also said that Ford would make her watch "nasty stuff."  Lacey brought Z.L. to a nearby furniture store.  Inside the store, Z.L. again told Lacey that Ford would "always make [me] get off the computer to watch nasty stuff."

¶5.    Lacey testified what Z.L. had described about the videos: "One video [Z.L.] said it was a man and a woman in the bed, and the woman was on top of the man jumping up and

---

[1] To protect the identify of the minor victim, we will use initials, rather than her name, throughout this opinion.

[2] Lacey is currently the legal guardian of Z.L.

2

down and screaming. And on the second [video], [Z.L.] said it was a man and a woman in a shower, and [Ford] said, 'I would let you do that but you'll tell.'" Lacey asked Z.L. if that was all that had happened. Z.L. responded, "[Ford] touch[es] me sometimes, too." Lacey and Z.L. left the store and returned to the vehicle. Lacey asked her what else had happened. Z.L. told her that Ford made her get on top of him, and he touched her breasts.

¶6. Lacey called Thalia to tell her what Z.L. had said, but Thalia did not return her call. The next day, Lacey reported what Z.L. had disclosed to her to the Pearl Police Department. The Pearl Police Department referred Z.L. to the Madison/Rankin Child Advocacy Center (CAC) for a forensic interview. Brandy Ray, a forensic interviewer and licensed professional counselor, interviewed Z.L. A video of the interview was admitted into evidence and was shown to the jury at trial.

¶7. During the interview, Z.L. told Ray that on two separate occasions, Ford made her touch his penis and buttocks. Z.L. said that the latest incident had occurred sometime within the last two months. Z.L. also said that Ford made her watch pornography. After the forensic interview was conducted, Ford was arrested. Ford waived his *Miranda*[3] rights and was interviewed by Investigator Jonathan Rose of the Pearl Police Department. A video of the interview was admitted into evidence and shown to the jury at trial.

¶8. Z.L. testified at trial.[4] Z.L. described the two separate incidents of sexual abuse by Ford. Z.L. testified that she was eleven years old and in the fourth grade when these

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] Z.L. was twelve years old at the time of trial.

3

incidents occurred. The first incident occurred when Z.L. walked into Ford's bedroom while he was lying on the bed watching pornography. Ford's penis was exposed. Ford made Z.L. touch his penis and moved her hands up and down on it. Ford ejaculated. Ford then told Z.L. to get on top of him. Ford made Z.L. take off her clothes. Z.L. testified that her "private [part was] touching his private [part]." Ford grabbed Z.L.'s hips and moved her back and forth on top of him until he ejaculated.

¶9.     The second incident occurred when Ford made Z.L. get off the computer in the living room so he could watch pornography. Z.L. left the living room, but Ford called her to come back. Z.L. testified that Ford wanted her to do what the individuals were doing on the pornographic video. Ford told her that he would let her do those things, but that she would tell. Ford made Z.L. touch his penis. After this second incident, Z.L. wrote a note to her grandmother, Thalia, telling her what happened. Thalia did not believe Z.L. A few weeks later, Z.L. told Lacey about the sexual abuse when they went to the furniture store. Z.L. testified that she did not tell Ray everything during the CAC interview that had happened because she was scared and ashamed.

¶10.    Ford took the stand in his defense. Ford testified that he never showed Z.L. pornography. He denied ever touching Z.L. inappropriately. However, he testified to a different account of the first incident that Z.L. had described. Ford explained that he was watching television in his bedroom, and Z.L. came in the bedroom. Ford testified that Z.L. told him that she was "hearing voices" that were telling her "to kiss [Ford]." Ford testified that he told her to get out of the bedroom. Ford testified that Z.L. came back in the bedroom

4

and told Ford that "[the voices] were telling her to take her clothes off." Ford also claimed that he fell asleep watching television and woke up with Z.L. straddling him completely nude. He testified that he pushed her off of himself and sent her to her room. Ford told Thalia this version of the incident. Ford testified that he and Thalia spoke to Z.L. about the incident, and Z.L. apologized.

¶11. After a three-day trial on September 22-24, 2014, the jury found Ford guilty for gratification of lust. On September 24, 2014, a judgment of conviction was entered. On September 30, 2014, Ford was sentenced to fifteen years in the custody of the MDOC. Ford was ordered to pay court costs, fees, and assessments in the amount of $2,431.50 within ninety days of his release from custody. Ford was also ordered to register as a sex offender under the Mississippi Sex Offenders Registration Law.

¶12. Ford filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied the motion, and Ford filed a timely notice of appeal.

## DISCUSSION

### I. *Lindsey* Brief

¶13. The Mississippi Supreme Court has summarized the following procedure established in *Lindsey*:

> When appellate counsel believes there to be no meritorious issues upon which to mount an appeal, the procedure outlined in *Lindsey v. State* must be followed. Appellate counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28 and certify to the court a diligent review of the procedural and factual history of the criminal action has taken place and that there are no arguable issues supporting the client's appeal.

5

Counsel must specifically examine:

> (a) the reason for the arrest and circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

> Counsel must then transmit a copy of the appellant's brief to the client, inform him or her of the findings, and explain his or her right to file an appellate brief pro se. At this point once all of the briefs are filed an appellate court shall evaluate the case on its merits and render its opinion.

*Havard v. State*, 94 So. 3d 229, 234-35 (¶10) (Miss. 2012) (internal citations and quotations omitted).

¶14. Ford's appellate counsel filed a brief in compliance with the court's directive in *Lindsey*. Ford filed a pro se brief raising various issues on appeal. We have reviewed the record and find there are no arguable issues for appeal. We also find that Ford's pro se brief raises no arguable issues and that no supplemental briefing is warranted. We will briefly address the issues raised in Ford's pro se brief, which have been restated for clarity.

## II. Whether Ford received ineffective assistance of counsel

### a. Appellate Counsel

¶15. Ford argues that he was denied effective assistance of appellate counsel because his appellate counsel filed a *Lindsey* brief stating that there were no arguable issues to present to this Court.

¶16. To prove ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense.

6

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standard for considering ineffective assistance of counsel is the same for appellate performance as it is for trial performance." *Johnson v. State*, 191 So. 3d 732, 736 (¶17) (Miss. Ct. App. 2015) (citing *Foster v. State*, 687 So. 2d 1124, 1138 (Miss. 1996)).

¶17. As an indigent, Ford was appointed appellate counsel to represent him on appeal. When appellate counsel believes there to be no meritorious issues upon which to mount an appeal, the procedure outlined in *Lindsey* must be followed. *Havard*, 94 So. 3d at 234 (¶10). Ford's appellate counsel properly complied with this established procedure. Accordingly, we find that Ford has failed to show that his appellate counsel's performance was deficient. *Lewis v. State,* 997 So. 2d 1001, 1006-07 (¶¶25-26) (Miss. Ct. App. 2009).

### b. Trial Counsel

¶18. Ford argues that he was denied effective assistance of counsel at trial. Ford's ineffective-assistance-of-counsel claim appears to be criticism of his attorney's closing argument, and general disagreements with his attorney's trial strategy.

¶19. "Generally, ineffective assistance claims are more appropriately brought during post[]conviction-relief [(PCR)] proceedings." *Havard*, 94 So. 3d at 240 (quoting *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008)). "It is well settled that the merits of a claim of ineffective assistance of counsel brought on direct appeal should be addressed only when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial [court]." *McSwain v. State*, 163 So.

3d 966, 969 (¶10) (Miss. Ct. App. 2014) (quoting *Jackson v. State*, 73 So. 3d 1176, 1181 (¶20) (Miss. Ct. App. 2011)).

¶20. The record does not affirmatively show ineffective assistance of counsel. Also, the parties have not stipulated that the record is adequate to allow this Court to make a finding without consideration of the findings of fact of the trial court. As a result, we deny relief on this issue without prejudice so that Ford may raise his ineffective-assistance-of-trial-counsel claim in PCR proceedings, if he so desires.

### III. Whether the trial court abused its discretion

#### a. Directed Verdict

¶21. Ford argues that the trial court erred by failing to grant a directed verdict. Ford attacks the credibility of Z.L.'s testimony in support of this assignment of error.

¶22. "When reviewing the trial court's denial of a motion for a directed verdict, this Court must consider all of the evidence in the light most favorable to the State and accept the evidence consistent with guilt as true." *Miller v. State*, 17 So. 3d 1109, 1113 (¶20) (Miss. Ct. App. 2009). "This Court will not disturb the trial court's ruling unless, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id.*

¶23. At trial, Z.L. testified that Ford made her rub his penis on two different occasions. Z.L. also testified that Ford told Z.L. to get on top of him. Ford made Z.L. take off her clothes. Z.L. testified that her "private [part was] touching his private [part]." Z.L. also testified that Ford grabbed her hips and moved her back and forth on top of him until he

8

ejaculated. Z.L.'s testimony showed gratification of lust in violation of section 97-5-23. The jury found Z.L. to be credible and returned a verdict of guilty. The jury is the sole judge of a witness's credibility. *Id.* at (¶21). Considering all of the evidence in the light most favorable to the State and accepting the evidence consistent with guilt as true, we find that the trial court did not err in denying the motion for a directed verdict.

### b.     Alleged Comments by the Trial Court

¶24.    Ford argues that the trial court "stated several times that [it] believed [Z.L.], before hearing any oral testimony from the stand." Ford does not cite to any portion of the record in support of this allegation, and offers no authority that such comments would result in reversible error. Regardless, after reviewing the record, we do not find any support for Ford's allegation.

### c.     Ray's Testimony

¶25.    Ford argues that the trial court erred by not allowing the defense to "impeach witness for the State Brand[y] R[ay]." However, this claim is contradicted by the record. The State did not call Ray as a witness in its case-in-chief. The defense called Ray to the stand during its case-in-chief. Also, the record does not show that the trial court denied Ford the opportunity to "impeach" his own witness, Ray. This argument is without merit.

¶26.    Ford also argues that Ray gave improper expert testimony. The following exchange occurred during the State's examination of Ray at trial:

> Q.     And is it common or not for children to wait to disclose [sexual abuse]?
>
> Mr. Baldridge:     Your Honor, I object. Some of this appears to be getting into expert testimony,

9

- -

The Court:         Sustained.

Mr. Baldridge:      - - and she's not been proffered as an expert.

¶27.   Ford's attorney timely objected to this testimony that he perceived to be expert testimony. The trial court sustained the objection, and the State heeded the trial court's ruling. This argument is also without merit.

### d.    Mistrial

¶28.   Ford argues that the trial court erred by denying his motion for a mistrial based on an alleged discovery violation. Specifically, Ford argues that Uniform Circuit and County Court Rule 9.04 was violated because he claims that the State withheld an audio statement that his wife, Thalia, gave to law enforcement.[5]

¶29.   "A trial court's rulings on discovery matters, including whether or not a discovery violation has occurred, are reviewed for abuse of discretion." *Jenkins v. State*, 131 So. 3d 544, 547 (¶10) (Miss. 2013). "Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for a mistrial is abuse of discretion." *Johnson v. State*, 89 So. 3d 630, 639 (¶29) (Miss. Ct. App. 2011) (citing *Caston v. State*, 823 So. 2d 473, 492 (¶54) (Miss. 2002)).

¶30.   "The procedure a trial [court] must follow when a discovery violation is alleged at trial is set forth in Rule 9.04(I)[.]" *Jenkins*, 131 So. 3d at 548 (¶11). Rule 9.04(I) provides in pertinent part:

---

[5] In Ford's pro se brief, he erroneously claims that Thalia's recorded audio statement was admitted into evidence. The statement was not admitted into evidence.

If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:

1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs[,] or other evidence; and

2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

¶31. At trial, the defense called Thalia to the stand to testify. On cross-examination, the State began asking her about a recorded statement that she had given to law enforcement relating to the investigation of Ford sexually abusing Z.L. The defense objected because it claimed that he was not aware of the statement and moved for a mistrial.

¶32. The trial court heard arguments from counsel outside the presence of the jury. The State explained it did not receive the audio recording until that morning. Also, the State argued that it was not obligated under Rule 9.04 to disclose the recording because it was for impeachment purposes. However, the defense argued that its motion for discovery had requested all recorded statements made to law enforcement. The recorded audio statement was played for the trial court. The trial court determined that "everything she's said on the [audio recording], she's already testified to live." The trial court excluded the statement from being admitted into evidence and prohibited the State from questioning Thalia regarding the

11

statement. The trial court denied Ford's motion for a mistrial.

¶33. We find that the trial court properly adhered to the procedure outlined by Rule 9.04(I). The defense was given an opportunity to hear the recorded interview. The defense claimed unfair surprise and moved for a mistrial. The trial court remedied the perceived discovery violation by excluding the statement and instructed the State not to question Thalia about the statement. Because the trial court properly followed the procedure outlined in Rule 9.04, the trial court did not abuse its discretion in denying Ford's motion for a mistrial.

### e. Lesser-Nonincluded-Offense Jury Instruction

¶34. Ford argues that the trial court erred by refusing his jury instruction for the lesser-nonincluded offense of contributing to the delinquency of a minor. Although Ford denied showing Z.L. pornography, Ford requested the contributing-to-the-delinquency-of-a-minor jury instruction based on the evidence presented by the State that Ford had exposed Z.L. to pornography.

¶35. In *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015), the court held that a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for a lesser-nonincluded offense, also known as a lesser-related offense, whose elements are not necessarily included in the charged offense. The parties agreed that contributing to the delinquency of a minor is not a lesser-included offense of gratification of lust. Thus, the trial court did not err by refusing the jury instruction for contributing to the delinquency of a minor.

### IV. Whether there is newly discovered evidence

¶36. Ford argues that he has newly discovered evidence that requires reversal of his conviction. Ford refers to alleged events that occurred in October 2014 after he was convicted. Ford contends these alleged events are "example[s] of the reliability and the lies [Z.L.] is capable of telling."

¶37. The trial court was not presented with any newly discovered evidence to consider, because Ford did not raise this issue in his motion for a new trial or, in the alternative, a JNOV. Also, there is no evidence in support of Ford's allegations in the record. We find that Ford's claim of newly discovered evidence is better suited for PCR proceedings. *See Branch v. State*, 118 So. 3d 646, 655-56 (¶43) (Miss. Ct. App. 2013).

¶38. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**